# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) <br> CV 16-2724 PSG (Ex) <br> CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.* <br> CFPB v. Fomichev <br> CFPB v. Gasparyan | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):     Order DENYING Defendants' Motions to Dismiss**

Before the Court are three motions to dismiss in three related cases. *See Consumer Financial Protection Bureau* ("*CFPB*") *v. D and D Marketing, et al.*, CV 15-9692 PSG (Ex), Dkt. # 39 ("*T3 Mot.*"); *CFPB v. Fomichev*, CV 16-2724 PSG (Ex), Dkt. # 29 ("*Fomichev Mot.*"); *CFPB v. Gasparyan*, CV 16-2725 PSG (Ex), Dkt. # 31 ("*Gasparyan Mot.*"). The Court finds the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering all the papers submitted by all the parties, the Court DENIES Defendants' motions.

## I.     Background

In December 2015, Plaintiff CFPB filed a Complaint against Defendants D and D Marketing, Inc., d/b/a T3Leads ("T3"), and Grigor and Marina Demirchyan for violations of the Consumer Financial Protection Act ("CFPA") of 2010. *See* CV 15-9692 PSG (Ex), Dkt. # 1. Grigor Demirchyan is T3's president, CEO, CFO, and sole director, and Marina Demirchyan is T3's vice president and accountant. In April 2016, Plaintiff filed two additional, related complaints for similar violations against Defendants Dmitry Fomichev and Davit Gasparyan, who both played a role in the founding and management of T3. *See* CV 16-2724 PSG (Ex), Dkt. # 1 ("*Fomichev Compl.*"), ¶¶ 7-10; CV 16-2725 PSG (Ex), Dkt. # 1 ("*Gasparyan Compl.*"), ¶ 5. Plaintiff subsequently filed amended Complaints in all three cases. *See* CV 15-9692 PSG (Ex), Dkt. # 37 ("*T3 Amended Compl.*"); CV 16-2724 PSG (Ex), Dkt. # 28 ("*Fomichev Amended Compl.*"); CV 16-2725 PSG (Ex), Dkt. # 30 ("*Gasparyan Amended Compl.*"). Because the three

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|----------|---------------------|------|-------------------|
|          | CV 16-2724 PSG (Ex) |      |                   |
|          | CV 16-2725 PSG (Ex) |      |                   |
| Title    | CFPB v. D and D Marketing *et al.* | | |
|          | CFPB v. Fomichev    |      |                   |
|          | CFPB v. Gasparyan   |      |                   |

Complaints are related and the three motions to dismiss are interlocking, the Court treats them together.

Defendant T3 is in the business of purchasing and selling consumer information, known as "leads." *T3 Amended Compl.* ¶ 5. T3 purchases leads from non-party entities, called "lead generators," and it sells the leads to other non-party entities, called "lead purchasers." *Id.* ¶¶ 8-10, 18-25. The gravamen of the CFPB's Complaints is a concern that deception is an integral part of the lead-generating and lead-purchasing system run by Defendants. At the front end, "lead generators" make representations to consumers about the quality of loans that they will receive from lenders. On the back end, "lead purchasers" offer consumers loans at usurious rates. Plaintiff alleges that T3 acts as a "middle man" or "lead aggregator" in the system and controls the information flow between the lead generators and the lead purchasers. *Id.* ¶¶ 40-41. It also alleges that T3 occasionally acts as its own "lead generator." *Id.* ¶ 9. As described in the Complaints, T3's role as a "middle man" in the system allows the lead generators to "claim ignorance" of the terms of the loans ultimately offered to consumers, and it allows the lead purchasers to "claim ignorance" of the methods used to attract consumers. *Id.*

The system starts with the lead generators that advertise short-term and payday loans to consumers through various websites. *Id.* ¶¶ 8-9, 18-25. To induce consumers to enter financial information into the websites, the lead generators make representations about the quality of loans that consumers are likely to receive from lenders. Lead generators make statements like, "lenders comply with all state and federal regulations to short-term loans" and "[t]heir rates are reasonable." *Id.* ¶ 21. Plaintiff alleges that the lead generators make it seem as if, by entering their information, the consumer is providing information directly to lenders. In reality, however, as soon as the consumer enters financial information, the "lead" is transferred to T3 and sold to "lead purchasers." *Id.* ¶ 18. T3 aggregates the leads and sells them to the highest bidder through a software system known as "ping tree." *Id.* ¶¶ 16, 25. Because the whole process happens in a matter of seconds and the consumer is redirected to a lead purchaser website without notice, the consumer has no way of knowing that the representations made on the lead-generator website are no longer valid or that their financial information has been shared with third parties. *Id.* ¶¶ 27, 40-41.

The system ends with the "lead purchasers." The lead purchaser base is largely comprised of small-loan and payday lenders that rely on leads to generate business for their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |

loans. Plaintiff alleges that the majority of lenders affiliated with T3's services are lenders organized by Indian tribes, also known as "tribal lenders" or "offshore lenders." *Id.* ¶¶ 31-32. By virtue of their organization under the laws of a foreign jurisdiction, offshore lenders do not need to comply with state consumer protection laws or state laws against usury. *Id.* Some of T3's lead purchasers are lenders that have been barred from lending in certain states because they charge unlawfully high interest rates to consumers. *Id.* ¶ 40. For these lenders, the only way to continue to access consumers in the state where they are barred is through a "lead aggregator" like T3. *Id.* In addition to charging high interest rates, Plaintiff alleges that many lead purchasers are involved in "fraudulent schemes," including "contacting consumers to collect non-existing debt." *Id.* ¶ 36. To demonstrate the pervasiveness of such unlawful conduct, Plaintiff points to an internal email from a T3 employee who referred to "the notorious scams we deal with on a daily basis." *Id.*

In 2012, the CFPB issued guidance to businesses operating in the consumer lead industry. *Defendant D&D Marketing's Request for Judicial Notice* ("*T3 RJN*"), Ex. A. The Court may take judicial notice of the guidance pursuant to Rule 201(b), which allows the Court to take notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Because the guidance is publicly available on the CFPB website, and Defendants do not challenge its accuracy, judicial notice is proper here. In relevant part, the guidance states:

> The Consumer Financial Protection Bureau ("CFPB") expects supervised banks and nonbanks to oversee their business relationships with service providers in a matter than ensures compliance with Federal consumer financial law . . .

> A service provider that is unfamiliar with the legal requirements applicable to the products or services being offered, or that does not make efforts to implement those requirements carefully and effectively, or that exhibits weak internal controls, can harm consumers and create potential liabilities for both the service provider and the entity with which it has a business relationship. Depending on the circumstances, legal responsibility may lie with the supervised bank or nonbank as well as with the supervised service provider.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) <br> CV 16-2724 PSG (Ex) <br> CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.* <br> CFPB v. Fomichev <br> CFPB v. Gasparyan | | |

*T3 RJN*, Ex. A.  In 2013, T3 developed a "Lender Audit Questionnaire" and requested information regarding whether its lead purchasers complied with the laws of the states where they made loans.  *T3 Amended Compl.* ¶ 37.  Plaintiff asserts that, although many purchasers failed to respond to the questionnaire or provided incomplete information, T3 continued to do business with them.  *Id.*

The CFPB now alleges that T3 and its founders and officers, the Demirchyans, Fomichev, and Gasparyan ("Defendants"), have violated the Consumer Financial Protection Act ("CFPA").  Specifically, Plaintiff alleges that Defendants allowed consumers to be exposed to lenders that could cause them substantial harm and they took advantage of consumers' lack of understanding of the material risks, costs, and conditions of their loans.  Because the CFPB filed three separate complaints, Defendants have filed three motions to dismiss.

II.   Legal Standard

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations of material facts in the Complaint and must construe all inferences in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attacked to the pleading."  *Branch v. Tunnell*, 14

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | | Date | November 17, 2016 |
|----------|---------------------------------------------------------------------|--|------|-------------------|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | | |

F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds in Galbrath v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

III.   <u>Discussion</u>

Defendants move to dismiss the Complaints on what the Court characterizes as seven different grounds.  The Court organizes these grounds for dismissal from most expansive to least, and ultimately finds each ground without merit.

First, Defendant Fomichev challenges the constitutionality of the structure of the CFPB, arguing that it violates the removal power of Article II and the Appropriations Clause of Article I.  *See Fomichev Mot.* 6:16-22, 8:4-13.  The other Defendants incorporate these constitutional arguments by reference in their own motions to dismiss.

Second, Defendants argue that the CFPA and the CFPB have not given Defendants adequate notice of conduct that is "unfair" or "abusive" under the CFPA.  *See T3 Mot.* 9:13-16, 11:15-24, 15:21-25; *Gasparyan Mot.* 3:14-17.  Defendants assert that the terms "unfair" and "abusive" are unconstitutionally vague, and they fault Plaintiff for rushing to litigation without adequately defining the terms through a proper rulemaking.

Third, Defendants argue that T3 is not a "service provider" under the CFPA because it provides only "ministerial" services to lead generators and purchasers.

Fourth, Defendants argue that the Complaints fail to state a claim for relief.  Defendants argue that the Court should dismiss the Complaints as a matter of law because the conduct that they allege is lawful, given that the law imposes no duty on Defendants to monitor third-party generators and purchasers.  Defendants also argue that the Complaints must be judged by a heightened pleading standard.  Individually, Defendants then assert particular reasons about why the Complaint against them is conclusory and lacking in sufficient facts.

Fifth, Defendants contend that the CFPB is not entitled to the relief it seeks because the CFPA does not allow for the recovery of restitution, penalties, or attorneys' fees.

Sixth, Defendant Gasparyan asserts that the Complaint against him must be dismissed for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) <br> CV 16-2724 PSG (Ex) <br> CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|----------|------------------------------------------------------------------------|------|-------------------|
| Title    | CFPB v. D and D Marketing *et al.* <br> CFPB v. Fomichev <br> CFPB v. Gasparyan | | |

failure to join indispensable parties.

Seventh, Defendant Gasparyan argues that the allegations against him are untimely because his conduct occurred outside the CFPA's statute of limitations.

The Court will take each of Defendants' arguments in turn.

A.   <u>Constitutional Argument</u>

Defendants argue that the CFPB has no power to enforce the CFPA because the structure of the CFPB is unconstitutional.  *See Fomichev Mot.* 6:16-22, 8:4-13.  Specifically, Defendants argue that three features render the CFPB unconstitutional: (1) the President's ability to remove the CFPB Director for cause only, (2) that the CFPB is led by a Director, not a multi-member commission, and (3) that the CFPB is funded by the Federal Reserve System, and not by regular congressional appropriations, and so cannot be monitored adequately by Congress.  *See generally Fomichev Mot.*  The structure of the CFPB is essential to this issue, so the Court will briefly review its key features.

Congress created the CFPB in 2010 with the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act" or "Act").  The Act tasked the CFPB with "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws."  *See* 12 U.S.C. § 5491(a).  Those laws included eighteen pre-existing consumer-protection statutes and Title X of the Dodd-Frank Act, 12 U.S.C. §§ 5531(a), 5536(a)(1), under which this case is prosecuted.  At the head of the CFPB is a single Director, who is appointed to a five-year term by the President with the advice and consent of the Senate.  *Id.* § 5491(a)-(b).  The President may remove the Director only "for inefficiency, neglect of duty, or malfeasance in office."  *Id.* § 5491(c)(3).  The CFPB receives its funding from the Federal Reserve, not annual congressional appropriations.  *Id.* § 5497(a)(1).  Each year, funding is capped at 12 percent of the operating expenses of the Federal Reserve (adjusted for inflation).  *Id.* § 5497(a)(1), (2).

The CFPB has provided much fodder for constitutional objection in the years since its creation.  Courts across the country are split over whether the structure of the CFPB—particularly the powers accorded to the Director—violates Article II of the Constitution.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|----------|---------------------|------|-------------------|
|          | CV 16-2724 PSG (Ex) |      |                   |
|          | CV 16-2725 PSG (Ex) |      |                   |
| Title    | CFPB v. D and D Marketing *et al.* | | |
|          | CFPB v. Fomichev    |      |                   |
|          | CFPB v. Gasparyan   |      |                   |

*Compare PHH Corp. v. CFPB*, No. 15-1177, 2016 WL 5898801 (D.C. Cir. Oct. 11, 2016) (holding that the CFPB is unconstitutionally structured in violation of Article II of the Constitution), *with CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014) (finding that the CFPB does not impermissibly interfere with the President's removal power*), and CFPB v. ITT Educational Servs.*, CV 14-292 SEB (TABx), 2015 WL 1013508, at *9 (S.D. Ind. Mar. 6, 2015) (upholding the CFPB structure as constitutional). The Ninth Circuit has not yet addressed the issue.

Having reviewed the relevant cases, the Court finds the recent opinion of the D.C. Circuit most persuasive. In its lengthy and comprehensive analysis, the D.C. Circuit reviewed the foundations of the executive removal powers and surveyed the structure of executive branch agencies, and found the CFPA truly unusual in the amount of power that it conferred on a single Director. *See PHH Corp.*, 2016 WL 5898801, at *7-12 ("The concentration of massive, unchecked power in a single Director marks a departure from settled historical practice and makes the CFPB unique among traditional independent agencies . . ."). In light of the Director's expansive powers, the Circuit ultimately concluded that the limitation on the President's removal powers—requiring the President to establish that the Director had engaged in "inefficiency, neglect of duty, or malfeasance"—violated Article II of the U.S. Constitution. *See id.* at *4 ("This new agency, the CFPB, lacks that critical check and structural protection, yet wields vast power over the U.S. economy. So 'this wolf comes as a wolf.'"). Importantly, however, although the court found the structure unconstitutional, it recognized that the remedy for the violation did not require the CFPB to halt operations. *Id.* Instead, the D.C. Circuit reasoned:

> What is the remedy for that constitutional flaw? PHH contends that the constitutional flaw means that we must shut down the entire CFPB (if not invalidate the entire Dodd-Frank Act) until Congress, if it chooses, passes new legislation fixing the constitutional flaw. To remedy the constitutional flaw, we follow the Supreme Court's precedents, including *Free Enterprise Fund*, and simply sever the statute's unconstitutional for-cause provision from the remainder of the statute. Here, that targeted remedy will not affect the ongoing operations of the CFPB.

> …

> In so ruling, we underscore the important but limited real-world implications of our

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
|  | CV 16-2724 PSG (Ex) |  |  |
|  | CV 16-2725 PSG (Ex) |  |  |

| Title | CFPB v. D and D Marketing *et al.* |
|---|---|
|  | CFPB v. Fomichev |
|  | CFPB v. Gasparyan |

decision.  As before, the CFPB will continue to operate and perform its many critical responsibilities, albeit under the ultimate supervision and direction of the President.

*Id.* at *4-5.  Thus, the court severed the for-cause provision from the law and allowed the CFPB to continue operations.  *Id.*  The Court finds this result measured and well-conceived, and accordingly, the Court adopts the same reasoning here.  The CFPB may continue to perform its duties, including the prosecution of this case against Defendants, even though its Director is now subject to direct removal by the President.

Because the D.C. Circuit did not consider whether the funding structure of the CFPB violated the Appropriations Clause, the Court separately considers this argument here. Defendants argue that, by receiving its funding through the Federal Reserve instead of congressional appropriations, the CFPB is unconstitutionally exempted from congressional oversight.  *See Fomichev Mot.* 11:4-28.  The Court disagrees.  The Appropriations Clause of the Constitution provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7.  However, as Judge Staton reasoned in *CFPB v. Morgan Drexen, Inc.*, "[t]he Appropriations Clause 'does not in any way circumscribe Congress from creating self-financing programs . . . without first appropriating the funds as it does in typical appropriation and supplement appropriation acts."  *See* 60 F. Supp. 3d 1082, 1089 (quoting *AINS, Inc. v. United States*, 56 Fed. Cl. 522, 539 (Fed. Cl. 2003), *aff'd*, 365 F.3d 1333 (Fed. Cir. 2004), *abrogated on other grounds by Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011)).  Congress's decision to allow the CFPB to self-fund through the Federal Reserve instead of annual appropriations from Congress does not violate the Appropriations Clause because it was still Congress, and not the executive or judicial branch, that made the decision about how the CFPB should be funded.  The Court therefore also concludes that the funding structure of the CFPB does not violate the Appropriations Clause, and it dismisses Defendants' constitutional arguments about the CFPB's structure.

### B.     CFPA Arguments

Defendants next argue that the Section X of the Dodd-Frank Act—Congress's most recent addition to the country's consumer financial protection laws—is unconstitutional because it does not provide regulated entities with adequate notice of the conduct that the CFPB will deem unlawful.  The CFPA makes it unlawful for "any covered person or service provider" to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |

"engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B); *see also* 12 U.S.C. § 5531(a). The law defines an "unfair" act as:

**(A)** [an] act or practice [that] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers; and

**(B)** such substantial injury is not outweighed by counterveiling benefits to consumers or to competition.

*See* 12 U.S.C. § 5531(c). The law defines an "abusive" act as an act or practice that:

**(1)** materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or

**(2)** takes unreasonable advantage of—

    **(A)** a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service;

    **(B)** the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or

    **(C)** the reasonable reliance by the consumer on a covered person to act in the interests of the consumer.

*Id.* § 5531(d). The CFPA also imposes liability on any person who "knowingly or recklessly provide[s] substantial assistance to a covered person or service provider in violation" of the act. 12 U.S.C. § 5536(a)(3). Section 5564(a) of the Act authorizes the CFPB to "commence a civil action against such person to impose a civil penalty . . . ." *Id.* § 5564; *see also id.* § 5565 (describing penalties for violations).

Defendants first argue that the CFPA is unconstitutional because it does not provide Defendants with notice of the activities that might give rise to a violation of the statute and because it is overly vague. *See Fomichev Mot.* 11:15-25; 13:23-24. Defendants do not point to a

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |

specific vague term in the statute, but instead argue generally that the law does not provide fair notice of the need to "vet and monitor" the conduct of the third parties. *See T3 Mot.* 10:8-10 ("Defendants are not aware of any case law, statute, regulation, rule, or other agency guidance that requires any service provider to 'vet and monitor' the conduct of the third parties with which they do business."); *Gasparyan Mot.* 7:17-19.

It is well established that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). However, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (internal citations omitted). Moreover, courts have recognized that "most statutes must deal with untold and unforeseen variations in factual situations," and as a result, Congress must "inevitably limit the specificity with which legislators can spell out prohibitions." *See CFPB v. CashCall, Inc.*, CV 15-7522 JFW (RAOx), 2016 WL 4820635, at *12 (C.D. Cal. Aug. 31, 2016).

Courts have recognized that the term "unfair" in Section X of the Dodd Frank Act taps into a "well-developed and long-established" definition of the same term in section 5 of the Federal Trade Commission Act ("FTCA"). *See CFPB v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016) (recognizing that the CFPA and the FTCA use "very similar phrasing"); *accord ITT Education Services, Inc.*, 2015 WL 1013508, at *17 ("The Bureau's own Supervision and Examination Manual confirms what the near-identical language of the two statutes suggests: that longstanding interpretations of the FTCA should inform interpretation of the CFPA as well."). The FTCA is now more than a century old and Courts have given shape to the meaning of its ban on "unfair or deceptive acts or practices." Because of the tradition of these terms and Congress's reliance on the FTCA in crafting the CFPA, the Court cannot conclude that the use of the term "unfair" in Section X of the Dodd-Frank Act renders the CFPA unconstitutionally vague. *See* 12 U.S.C. § 5531(d) (defining the term "abusive").

The Court makes the same determination as to the term "abusive." Although the term "abusive" does not appear in the FTCA, the courts that have examined this term have found that it represents a "more flexible, expansive standard" than the term "unfair" for consumer protection laws. *See ITT Education Servs.*, 2015 WL 1013508, at *18-19. The added flexibility

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) <br> CV 16-2724 PSG (Ex) <br> CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|----------|------------------------------------------------------------------------|------|-------------------|
| Title    | CFPB v. D and D Marketing *et al.* <br> CFPB v. Fomichev <br> CFPB v. Gasparyan | | |

of the standard does not make the law unconstitutionally vague, especially since the statute itself provides ample definition for the term "abusive." *See* 12 U.S.C. 5531(d); *see also ITT Education Servs.*, 2015 WL 1013508, at \*19. It defines an "abusive" act as an act that "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service" and an act that takes "unreasonable advantage" of consumers' lack of understanding of material conditions, inability to protect themselves, or reasonable reliance. *See* 12 U.S.C. 5531(d). Because the law itself explains what the term "abusive" means, the Court cannot conclude that any part of Section X is unconstitutionally vague.

In further support of this conclusion, the Court recognizes the ample guidance that the CFPB has provided to businesses of how it intends to interpret the mandates in the CFPA.[1] In 2012, the CFPB told businesses that they would be held responsible for monitoring the practices of third parties. *See T3 Opp.* 6:5-8 (citing *T3's RJN*, Ex. A). The guidance contained no ambiguity: businesses were instructed to monitor each other or risk liability under the law.[2]

-----

[1] The Court is in receipt of a Notice of Supplemental Authority, filed by Defendants T3 and the Demirchyans on November 3, 2016. Dkt. # 55. In the Notice, Defendants ask the Court to consider the CFPB's most recent Compliance Bulletin and Policy Guidance. *Id.* In significant part, the 2016 guidance is identical to the guidance already before the Court. *See Notice of Supplemental Authority*, Ex. A, at 2 ("Service provider is generally defined in section 1002(26) of the Dodd-Frank Act as 'any person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product of service.'") ("A service provider that is unfamiliar with the legal requirements applicable to the products or services being offered, or that does not make efforts to implement those requirements carefully and effectively, or that exhibits weak internal controls, can harm consumers and create potential liabilities for both the service provider and the entity with which it has a legal relationship."). Thus, the updated Notice does not change the outcome here.

[2] Defendants argue that the "duty to monitor" that the guidance describes only flows one way: from banks and other lenders to service providers. A review of the guidance demonstrates that this is not true. The CFPB instructed businesses that "legal responsibility may lie with the supervised bank or non-bank *as well as* with the supervised service provider." *See T3 RJN*, Ex. A.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |

Because this guidance came from the agency responsible for administering the statute, Defendants should have taken the CFPB's expert opinion quite seriously.   The Complaints suggests that Defendants did so—at least initially.  In 2013, Defendants developed and issued a "Lender Audit Questionnaire" to prospective lead purchasers.  *Fomichev Amended Compl.* ¶ 39; *Gasparyan Amended Compl.* ¶ 39.  Despite these initial steps toward compliance, Defendants never followed up on the questionnaire and continued to do business with non-responsive entities.  *T3 Opp.* 5:1-7.  In light of the allegations in the Complaint, Defendants' argument that they did not have adequate notice of a duty to monitor third-party lead purchasers and generators is implausible.

Even if the Court were to accept Defendants' arguments that this CFPB prosecution is a departure from other prosecutions and that the CFBP now advances a new interpretation of the law, courts have recognized that due process concerns do not preclude an agency from prosecuting "borderline cases."  *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 256 (3d Cir. 2015).  In a case interpreting the FTCA, the Third Circuit recognized that, although the terms of the law may be "far from precise," the law provides adequate notice if Defendants could "reasonably foresee" that a court could construe its conduct as falling within the statute.  *See id.* at 256 ("[A] company is not entitled to such precision as would eliminate all close calls. . . . the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." (citing *Nash v. United States*, 299 U.S. 373, 377 (1913)).  Here, there is little doubt that fair notice is satisfied, given the links between the CFPA and the FTCA, and the CFPB's guidance as to liability.  Thus, the Court declines Defendants' invitation to find that the law—or, more precisely, the CFPB's interpretation of the law—is invalid.

Finally, Defendants fault the CFPB for rushing to litigation rather than first clarifying the scope of Section X of the Dodd-Frank Act through rulemaking.  They argue that this enforcement action is the equivalent of "retroactive legislation" because it seeks to penalize Defendants for conduct that was lawful at the time it was completed and because the CFPB is "not authorized to utilize this complaint as the first means of giving [Defendants] notice of the duties the CFPB seeks to establish."  *See Gasparyan Mot.* 3:14-17, 9:13-16.  For the reasons already discussed above and those below, the Court finds these arguments lacking in merit.  It is the agency's prerogative to decide whether to proceed through a rulemaking, where it issues regulations associated with the law, or through an adjudication, where it develops the law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| | CV 16-2724 PSG (Ex) | | |
| | CV 16-2725 PSG (Ex) | | |
| Title | CFPB v. D and D Marketing *et al.* | | |
| | CFPB v. Fomichev | | |
| | CFPB v. Gasparyan | | |

through adversarial process. *See NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 293 (1974) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947)) ("[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."). The CFPB here has chosen to proceed through litigation. It did not abuse its discretion in so deciding.

In sum, the Court rejects Defendants' arguments that the CFPA is vague or that the CFPB did not provide Defendants with adequate notice that their conduct might be subject to civil penalties.

C.     Service Provider Status

Defendants next argue that T3 is not a "service provider" and so is not covered by the CFPA. *See T3 Mot.* 4:20-27. Under the CFPA, a "service provider" is "any person that provides a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that . . . processes transactions relating to the consumer financial product or service." 12 U.S.C. § 5481(26)(A). The law excludes from the definition of service provider "any person who provides a support service of a type provided to businesses generally or a similar ministerial service." § 5481(26)(B).

Plaintiff argues that T3 is a service provider because it plays an "integral role" in "processing and selling consumer-loan applications to small-dollar lenders." *T3 Opp.* 2:25-27. It also asserts that, because T3's services are "uniquely tailored to the needs of small-dollar lenders," T3 is not a seller that supplies services to "businesses generally." *See id.* 4:1-4. For their part, Defendants suggest that T3 is only a "ministerial service" because it transfers consumer data from generators to purchasers without any "discretion" from its staff. *T3 Mot.* 6:6-14; *see also T3 Mot.* 5:19-21; *Gasparyan Mot.* 14-17.

Defendants have failed to show why "discretion" should have anything to do with the assessment of whether it is a "service provider" under the CFPA. Instead, the Court is convinced by Plaintiff's argument that Congress designed the service provider exception for "ministerial" service providers to protect third-party services—like office supply or food vendors, or internet service providers—that supply "material" services to "covered persons" but

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|----------|---------------------|------|-------------------|
|          | CV 16-2724 PSG (Ex) |      |                   |
|          | CV 16-2725 PSG (Ex) |      |                   |

| Title | CFPB v. D and D Marketing *et al.* |
|-------|-------------------------------------|
|       | CFPB v. Fomichev                    |
|       | CFPB v. Gasparyan                   |

do not have reason to know of the underlying illegality of the covered person's conduct. Plaintiff's interpretation of the ministerial exemption is supported by an explicit exemption in the law for businesses that provide "time or space for an advertisement" of a consumer financial product, including "print, newspaper, or electronic media." *Id.* § 5481(26)(B)(ii). Vendors that provide advertising space are akin to the office supply or food vendors because these third-party businesses cannot reasonably be expected to vet and monitor the entities with which they do business. But T3 does not qualify as such a "ministerial" service provider. As Plaintiff points out, T3's services are specific to the business of small-dollar lending, so it has reason to know the dynamics of the trade. Moreover, T3 has the capacity, through its connections with purchasers and lenders, to vet and monitor "covered persons," like the lenders with which it does business. *See T3 Opp.* 3:25-4:1. The law explicitly contemplates that entities like T3 that "process transactions" related to consumer financial products will be liable for violations of the law. *See* § 5481(26)(A).

Accordingly, the Court cannot conclude, based on the facts alleged in the Complaint, that T3 is not a service provider under the CFPA.

### D.  Failure to State a Claim

Defendants dispute the sufficiency of the amended Complaints by arguing that (1) the claims fail as a matter of law, (2) the Complaints must be subjected to a heightened pleading standard, and (3) the CFPB's factual allegations are inadequate. The Court first addresses Defendants' argument that T3's conduct is lawful. The Court then turns to assess the pleading standard and the individual allegations against each Defendant.

#### i.  Unlawful Conduct

The CFPB alleges that Defendants' conduct is unlawful under both the unfair and abusive prongs of the CFPA. *See T3 Amended Compl.* ¶¶ 43-53, 59-67. Under the law, conduct is "unfair" if it (1) causes or is likely to cause substantial injury to consumers, (2) is not reasonably avoidable by consumers, and (3) is not outweighed by countervailing benefits to consumers or to competition. *See* 12 U.S.C. § 5531(c)(1). Conduct is abusive if it "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service" or takes unreasonable advantage of consumers. *See id.* § 5531(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | | Date | November 17, 2016 |
|---|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | | |

Defendants make three general arguments about why the conduct alleged in the Complaints is lawful. First, they argue that they have no duty to monitor the statements made by the third-party generators and purchasers. *See id.* 18:4-20; *see also supra* Part B & C. Second, T3 argues that its conduct is "commercially reasonable" and an "undeniably common practice." *See T3 Reply* 6:12-17; *T3 Mot.* 11:24-28 (arguing that the lead generators' statements are "puffery"); *T3 Mot.* 12:15-16 (arguing that the tribal lenders' statements are lawful because tribal lenders do not have to comply with state usury laws). They argue that the lead generators' statements are lawful because the lead generators have no way of knowing what loan terms are ultimately offered to consumers, and they do not know what T3 intends to do with the lead. Defendants argue that the lead purchasers' practices are similarly lawful because purchasers, like tribal lenders, do not violate the laws of the jurisdictions in which they sit. Third, Defendants argue that their conduct is lawful because the lead purchasers make disclosures that negate any "misleading statements" from other parties. *See T3 Mot.* 11:24-28, 12:3-11; *see also id.* 12:3-11 ("Even if the statements were misleading, they are not unlawful because, as the Bureau alleges, consumers are automatically redirected to lenders' websites, which disclose the identity of the lender and the terms of the offered loans.").

The Court dismisses Defendants' first and second arguments straight away. The Court has already addressed the first, having found that CFPB and the CFPA provided Defendants with adequate notice of their duty to monitor the businesses with which they transact. *See supra* Part B & C. The Court finds the second argument equally unavailing because it takes too narrow a view of the allegations in the Complaints. Plaintiff's case does not rest on an assumption that the lead purchasers or lead generators violated the law. Rather, Plaintiff asserts that Defendants, as the middle men, made it possible for each party to claim ignorance of the other's unlawful practices. It also alleges that the collaboration among the entities, when taken together, was designed to confuse consumers. Thus, Defendants' argument that the practices of its generators and purchasers are "commercially reasonable" is neither here nor there. Defendants are also wrong that the conduct of their partners is lawful. As an example, courts in this district and elsewhere have recognized that "offshore lenders" that charge usurious interest rates to consumers violate state consumer financial protection laws. *See CFPB v. CashCall, Inc.*, CV 15-7522 JFW (RAOx), 2016 WL 4820635, at *12 (C.D. Cal. Aug. 31, 2016).

Having disposed of the first and second arguments, the Court now turns to the third: whether the "disclosures" made by the lead generators and lead purchasers negate wrongfulness

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|----------|---------------------------------|------|-------------------|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |

on the part of Defendants. Defendants point to legal precedents that fault consumers for failing to read and fully understand their legal obligations. *See FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 945-46 (N.D. Ill. 2008). The Court construes this argument as part of Defendants' broader argument that consumers could have "reasonably avoided" injury by reading the disclosures.

"In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). An injury is reasonably avoidable if consumers "'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (quoting *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988)).

Although the law generally requires consumers to understand their legal obligations, the Dodd-Frank Act recognized that even diligent consumers could be misled by bad actors. In the scheme alleged in the Complaints, Defendants purportedly took advantage of a system of disclosures designed to deceive even consumers that read disclosures. At the start of the scheme, lead generators disclose that "lenders comply with all state and federal regulations to short-term loans" and that "[t]heir rates are reasonable." *T3 Amended Compl.* ¶ 21. But, by the end of the scheme, after the lead generators sell the consumer information to T3 and T3 sells it to lead purchasers, the initial disclosures are ignored. *See id.* ¶ 36; *T3 Opp.* 11:24-12:1. Many consumers end up in loans that do not comply with state or federal regulations. No amount of disclosure at the back-end can negate the contradiction between the lead generators' representations and the lead purchasers' back-end disclosures. In short, because Defendants' system, as alleged, was designed to deceive, it is unreasonable for Defendants to now argue that consumers could have avoided injury by wising up to the scheme earlier on.

Accordingly, the Court finds that the allegations in the Complaint, which must be taken as true, are sufficient to raise a plausible inference that Defendants have engaged in unlawful conduct. *T3 Opp.* 13:5-7.

     ii.    *Heightened Pleading Standard*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
| | CV 16-2724 PSG (Ex) | | |
| | CV 16-2725 PSG (Ex) | | |
| Title | CFPB v. D and D Marketing *et al.* | | |
| | CFPB v. Fomichev | | |
| | CFPB v. Gasparyan | | |

In their next argument, Defendants assert that the Rule 9(b) pleading standard applies to claims under the CFPA. Under Rule 9(b), a party alleging fraud or mistake must state their allegations with "particularity." Although district courts are split as to whether Rule 9(b) should apply to consumer protection claims, the majority of courts have found that a heightened pleading standard is inappropriate, even if there is a "deceptive" dimension to such claims. *See CFPB v. Frederick J. Hanna & Assoc., P.C.*, 114 F. Supp. 3d 1342 (N.D. Ga. 2015); *Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923-24 (E.D. Va. 2006) (collecting cases and deciding that a § 1692e(8) violation is not fraud so Rule 9(b) does not apply); *see also FTC v. Freecom Commc'ns, Inc.*, 410 F.3d 1192, 1204 n.7 (10th Cir. 2005) (declining to apply Rule 9(b) to the FTCA); *Le Blanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (declining to apply Rule 9(b) to the Fair Debt Collection Practices Act). These courts rely on the United States Supreme Court's caution against extending the heightened pleading standard beyond claims for fraud of mistake, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), and the "remedial nature" of consumer protection statutes, which are designed to facilitate a consumer's ability to enforce their rights. *See Frederick J. Hanna & Assoc.*, 114 F. Supp. 3d at 1371-74.

Defendants point to *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) as a controlling case in this Circuit on the issue of whether consumer financial protection laws are subject to a heightened pleading standard. Having reviewed the case, the Court finds the holding in *Vess* too narrow to extend to the Complaints here. In *Vess*, plaintiff alleged violations of California Civil Code section 1770 and California Business and Professions Code sections 17200 and 17500, which prohibit "unfair methods of competition and unfair or deceptive acts" and "untrue or misleading statements." *Id.* at 1101-02. The Ninth Circuit recognized that the complaint in *Vess* contained both fraud allegations and allegations where fraud was not an essential element to the claim. *See id.* at 1103. The court concluded, "[W]here fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Id.* at 1105. The Ninth Circuit defined "fraud" narrowly to include only claims that allege that a defendant made a false representation, knew of its falsity, and intended to defraud, and where the plaintiff relied on the statement and established damages. *Id.* The court went on to find that many of plaintiff's consumer protection claims—including claims that defendant failed to act to protect consumers—were not fraud claims and thus subject only to the Rule 8 pleading standard. *Id.* at 1106.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |

The Complaints here do not allege that Defendants made misrepresentations to consumers knowing of their falsity—an element essential to a fraud claim. Instead, the Complaints allege that Defendants failed to monitor and vet the entities with which they did business and so facilitated a scheme that took advantage of consumer confusion. Given the Ninth Circuit's narrow interpretation of "fraud" in *Vess*, these claims need not satisfy a heightened pleading standard. Accordingly, the Court rejects Defendants' argument that a heightened pleading standard applies to the Complaints.

> *iii.*   *Allegations Specific to Each Defendant*

The Court now individually examines each Complaint to determine whether Plaintiff has pled sufficient facts to state a plausible claim for relief against each Defendant. The Court proceeds in the order that Plaintiff filed its Complaints by first examining the allegations against T3 and the Demirchyans, then Fomichev and Gasparyan. The Court ultimately finds that the Complaints raise a plausible inference of illegal conduct as to all Defendants, and accordingly, the Court denies Defendants' motions to dismiss for failure to state a claim.

> *a.*   *T3*

As it relates to the specific allegations against it, T3 argues that the CFPB has not pled enough facts to support the allegation that its conduct is likely to result in substantial injury to consumers. *See* 12 U.S.C. § 5531(c)(1); *T3 Mot.* 17:16-18, 18:4-20. Courts have found that there is a "likelihood of substantial injury" to consumers where plaintiff can show that "injury is a predictable consequence" of the Defendant's actions. *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1156 (9th Cir. 2010).

The CFPB alleges that T3 knew or should have known that the leads that it provided to lead purchasers would result in void loans because the lead purchasers would fail to comply with the laws of the consumer's state. *See T3 Opp.* 10:14-20. It also asserts that T3 sold consumer information to entities that it knew were likely involved in fraudulent activity. *Id.* 10:21-11:2. Accepting the allegations in the Complaint as true, Plaintiff has adequately pled substantial injury. It has shown it likely that consumers, who provide their financial information to lead generators, may end up entering into loans that are either void or in violation of state usury laws. If the facts are true, consumers may also be exposed to fraudulent schemes that jeopardize their

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| | CV 16-2724 PSG (Ex) | | |
| | CV 16-2725 PSG (Ex) | | |
| Title | CFPB v. D and D Marketing *et al.* | | |
| | CFPB v. Fomichev | | |
| | CFPB v. Gasparyan | | |

credit and financial health.  Given these possibilities, the Court cannot conclude, at this phase in the litigation, that there is no likelihood of substantial injury to consumers.

b.    *Demirchyans*

The CFPA makes it unlawful for "any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of the provisions of [§ 5531]."  *See* 12 U.S.C. § 5536(a)(3).  The Demirchyans argue that the factual allegations in the Complaint are insufficient to establish that they (1) acted knowingly or recklessly, or (2) provided "substantial assistance" in violation of § 5531.  *See T3 Mot.* 21:3-23:8.

Turning first to the state of mind required to violate the CFPA, the parties dispute the definition of "knowingly" under the law.  *See T3 Opp.* 13-14; *T3 Reply* 10.  Plaintiff argues that "knowingly" requires defendants to have only "knowledge of the facts, acts or transactions constituting the alleged violation."  *See T3 Opp.* 13-14.  Defendants argue that they must have "'actual knowledge' of the primary wrong and of the aider and abettor's 'role in furthering that violation.'"  *See T3 Reply* 10.  Although Defendants have the better of this argument,[3] it is of no moment because the allegations against the Dmirchyans satisfy even the stricter definition of "knowing."  The allegations also meet the standard for recklessness, which requires Plaintiff to establish sufficient facts to show that defendant's conduct led to "an unjustifiably high risk of

---

[3]    Ninth Circuit courts have recognized the Federal Trade Commission Act ("FTCA") as an important analog for interpreting terms in the CFPA.  *See CFPB v. Gordon*, 819 F.3d 1179, 1193 n.7 (9th Cir. 2016) (adopting meaning of "deceptive act or practice" from the FTCA in recognition of Congress's reliance on the FTCA in drafting the CFPA); *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1072 n.3 (9th Cir. 2016) (recognizing that the CFPB shares concurrent authority with the Federal Trade Commission to enforce the FTCA and that the missions of the laws are overlapping); *CFPB v. IrvineWebWorks, Inc.*, SACV 14-1967 JVS (ANx), 2016 WL 1056662, at *12.  The term "knowing" has an established meaning in the context of the FTCA, 15 U.S.C. § 45(m)(1)(A), which is "actual knowledge or knowledge fairly implied based on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule."  Thus, the Court adopts the FTCA's interpretation for the term "knowingly" in the CFPA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) <br> CV 16-2724 PSG (Ex) <br> CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.* <br> CFPB v. Fomichev <br> CFPB v. Gasparyan | | |

harm that is either known or so obvious that it should be known." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007).

The Complaint alleges that both Grigor and Marina Demirchyan had significant responsibility in managing T3 and its operations. Grigor Demirchyan is President, CEO, CFO, and T3's sole director. *T3 Amended Compl.* ¶ 6. He also provided accounting services for the corporation. *Id.* Marina Demirchyan is T3's Vice President and also provides accounting services. *Id.* ¶ 7. The Complaint alleges that the Demirchyans "had authority and responsibility to decide whether to accept any lead generator or purchaser into or remove them from T3's network." *Id.* ¶ 15. They also designed T3's process for filtering and selling consumer information to lead purchasers. *Id.* ¶ 17. These allegations raise a plausible inference that the Demirchyans not only knew of T3's business model, but also of the unlawful conduct of T3's lead generators and purchasers, and T3's role in the scheme. Accordingly, the Court declines to dismiss the Complaint for failure to state sufficient facts to establish that the Demirchyans acted knowingly or recklessly.

Second, the Demirchyans argue that they did not provide "substantial assistance" to T3. To show "substantial assistance," Plaintiff must establish that Defendants "in some sort associate[d] himself with the venture, that [they] participate[d] in it as in something that [they] wishe[d] to bring about, [and] that [they sought] by his action to make it succeed." *See SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).[4] Courts have found that the substantial assistance doctrine does not impose a demanding standard. *See FTC v. Consumer Health Benefits Ass'n*, CV 10-3551 ILG (RLMx), 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011). Rather, the law requires only that the assistance be "more than mere casual or incidental dealing with a seller or telemarketer that is unrelated to the violation of the Rule." *See id.*

---

[4]     Because Courts have not interpreted the term "substantial assistance" in the context of the CFPA, it is appropriate to look to analogous administrative laws, like the FTCA and federal securities laws, for guidance. *See United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007) ("[C]ourts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter.").

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
|  | CV 16-2724 PSG (Ex) |  |  |
|  | CV 16-2725 PSG (Ex) |  |  |

| Title | CFPB v. D and D Marketing *et al.* |
|---|---|
|  | CFPB v. Fomichev |
|  | CFPB v. Gasparyan |

The T3 Amended Complaint alleges that the Demirchyans "had the authority and responsibility to decide whether to accept any lead generator or purchaser into or remove them from T3's network." *T3 Amended Compl.* ¶ 15.  It also asserts that the Demirchyans "shared responsibility for deciding the position of each purchaser in the ping tree" used to distribute consumer information to lead purchasers. *Id.* ¶ 17.  Accepting these factual allegations as true, Plaintiff has established a plausible inference that the Demirchyans were more than incidentally involved in T3's business.[5]

### c.    Fomichev

Defendant Fomichev argues that the Complaint does not show that he provided "substantial assistance" to T3 or other service providers. *Fomichev Mot.* 15:10-22, 16:15-21 ("[N]owhere does the Amended Complaint allege that Mr. Fomichev has ever read such an application, visited the websites that allegedly contain inaccurate statements, or otherwise acted or possessed any knowledge that would cause him to be personally liable for wrongdoing.").  He also asserts that the Complaint "fails to allege any conduct to which injury is attributed" because all injuries are "future and potential." *Id.* 17:3-12.  Because the Court has already established that the CFPB adequately pled injury, the Court focuses here on whether the CFPB has demonstrated that Fomichev substantially assisted in the alleged illegal enterprise.

Contrary to Fomichev's characterization that the Complaint only alleges his status as an officer of T3, the Complaint contains enough facts that, taken as a true, raise a plausible inference that Fomichev is liable for violations of the CFPA.  It asserts that Fomichev co-founded T3 in 2005 and owns more than 50 percent of the business. *Fomichev Amended Compl.* ¶ 7.  It also asserts that Fomichev "design[ed] the proprietary software and systems used to transact T3's business." *Id.* ¶ 8.  Like the Demirchyans, the Complaint also concludes that Fomichev had the authority and responsibility to decide whether to accept a purchaser or

---

[5]     The Court declines the CFPB's invitation to examine the filings in the state court cases, *Gasparyan v. Demirchyan, et al.*, BC554306 (Cal. Super. Ct. Aug. 8, 2014), and *Gasparyan v. D and D Marketing, et al.*, BC585895 (Cal. Super. Ct. June 23, 2015), where Defendants purportedly make competing claims as to their ownership of T3. *See T3 Opp.* 17 n.77.  The allegations in the Complaint are sufficient to raise a plausible inference that Defendants provided substantial assistance to T3 in connection with a violation of the CFPA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
| | CV 16-2724 PSG (Ex) | | |
| | CV 16-2725 PSG (Ex) | | |

| Title | CFPB v. D and D Marketing *et al.* | |
| | CFPB v. Fomichev | |
| | CFPB v. Gasparyan | |

generator into T3's business. *Id.* ¶ 17. Even if it is true that Fomichev never visited the third-party websites personally, his alleged knowledge of the consumer information industry, his significant involvement with T3, and his awareness of the interplay among consumers, generators, and purchasers, is enough to raise a plausible inference that Fomichev is liable for substantially assisting T3 in a violation of the CFPA. Accordingly, the Court denies Fomichev's motion for failure to state a claim.

   *d.*  *Gasparyan*

  Defendant Gasparyan also asserts two reasons why the Court should dismiss the Complaint against him. First, Gasparyan argues that the Complaint does not allege "any facts to support the allegation that Gasparyan acted 'knowingly and recklessly.'" *Gasparyan Mot.* 10-12. Second, Gasparyan argues that the Complaint does not allege a "substantial causal connection" between Gasparyan's action and the purported harm. *Id.* 13-14. Like the previous arguments, the Court likewise finds both of Gasparyan's arguments availing.

  As the Court concluded above, "knowingly" under the CFPA means to have "actual knowledge or knowledge fairly implied" that the acts are "unfair or deceptive and [are] prohibited by such rule." *See* 15 U.S.C. § 45(m)(1)(A) (defining "knowingly" under the FTCA). "Recklessness" requires the defendant to take "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *See Safeco*, 551 U.S. at 68-69. The Complaint alleges that Defendant Gasparyan co-founded T3 with Fomichev in 2005, and served as the company's chief financial officer until 2009 and its chief marketing officer until 2014. *Gasparyan Compl.* ¶¶ 7-8. Like the other Complaints, the Gasparyan Complaint asserts that Gasparyan "had authority and responsibility to decide whether to accept any lead generator or purchaser into or remove them from T3's network." *Id.* ¶ 17. It also alleges that Gasparyan played a role in designing T3's "ping" system, which sold consumer data to the highest bidder without regard for consumer expectations or the promises made to consumers by lead generators. *Id.* ¶ 19. As with the other Complaints, these facts are sufficient to raise a plausible inference that Gasparyan knew of the company's conduct and disregarded a substantial risk that consumers would be misled or harmed by the sharing of their information with unsavory purchasers.

  Moving to Gasparyan's second argument, the Court is also satisfied that the complaint

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) <br> CV 16-2724 PSG (Ex) <br> CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.* <br> CFPB v. Fomichev <br> CFPB v. Gasparyan | | |

shows a causal connection between Gasparyan's conduct and consumer harm.  By alleging that Gasparyan founded and maintained a service that sells consumer information without adequate vetting, the Complaint raises a plausible inference that Gasparyan's conduct is linked to the consumer harm.  Gasparyan's attempts to argue that the Complaint does not allege any actual harm or actual misconduct are meritless.  Accordingly, the Court denies Defendant Gasparyan's motion to dismiss for failure to state a claim.

       E.    <u>Remedies</u>

Defendants next argue that the CFBP cannot recover restitution, penalties, or its attorneys' fees.  *See T3 Mot.* 24:17-20.  Where relief is unavailable as a matter of law, that portion of the prayer of relief must be dismissed.  *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1170 (C.D. Cal. 2011).  However, that is not the case here.  The CFPA permits the Court to order Defendants to pay restitution and other penalties for violations of the CFPA, and to pay the costs of the litigation.  *See* 12 U.S.C. §§ 5565(a)(2)(C), (H), 5565(b) ("In any action brought by the Bureau . . . [it] may recover its costs in connection with prosecuting such action if the Bureau . . . is the prevailing party in the action.").  Because the law is abundantly clear on this point, the Court finds Defendants' argument meritless and declines to strike any portion of Plaintiff's prayer for relief.

       F.    <u>Lead Generators and Purchasers are Indispensable Parties</u>

In the sixth category of arguments, Defendant Gasparyan argues that T3, the lead generators, and the lead purchasers are indispensable parties.  *Gasparyan Mot.* 17-20.  Specifically, Gasparyan argues that he will be unable to defend the claims against him because his liability is tied to T3.  He is also concerned that, because some of the tribal lenders possess sovereign immunity, he would not be able to obtain discovery from these parties unless they are joined.  *Id.* 18.

Gasparyan's reasons do not meet the standard required for joinder of parties.  The Federal Rules of Civil Procedure provide that a party must be joined if (1) the Court cannot accord complete relief without the absent party, or if proceeding without the party might (2) impair the party's ability to protect their interest, or (3) subject the party to a substantial risk that it might incur "double, multiple, or otherwise inconsistent obligations because of the interest."  *See* Fed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9692 PSG (Ex) CV 16-2724 PSG (Ex) CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.* CFPB v. Fomichev CFPB v. Gasparyan | | |

R. Civ. P. 19(a)(1).  The three grounds do not apply here.  First, there is no risk that the Court cannot provide complete relief because the Gasparyan Complaint seeks only to hold Gasparyan liable for his actions in operating T3.  Second, although there is a risk that third parties will be affected by the enforcement action against Gasparyan, nothing about this litigation impairs the third party's ability to protect their interest through separate litigation.  *See Gasparyan Opp.* 21. Third, there is no risk of "double, multiple, or otherwise inconsistent" obligations.  The three CFPB complaints related to T3's conduct are all before the Court, which can provide a uniform and consistent disposition as to all parties.  Because none of the three grounds for necessary joinder apply to this case, the Court denies Defendant Gasparyan's motion to dismiss for failure to join indispensable parties.

G.    Time-Barred

Finally, Gasparyan argues that the CFPB "is barred by the statute of limitations from bringing any claims against Gasparyan for any action which took place prior to 2013." *Gasparyan Mot.* 21.  Gasparyan faults the CFPB for failing to plead the dates of the wrongful conduct.  *Id.* 21:20-28.  Under the CFPA, the CFPB may not bring an action for conduct that occurred "more than 3 years after the date of discovery of the violation to which the action relates."  12 U.S.C. § 5564(g).  The CFPB correctly points out that nothing on the face of the amended complaint suggests that Gasparyan's conduct occurred before April 2013, more than three years before CFPB brought the Complaint.  *See Gasparyan Opp.* 22:5-15.  Accordingly, the Court cannot conclude that the Complaint is barred by the statute of limitations.  Should the issue remain relevant, however, Defendant may renew the argument in a motion for summary judgment.

IV.    Conclusion

Having considered the moving, opposing, and reply papers in the three related cases, the Court DENIES Defendants' motions to dismiss.  The Court concludes:

1.    Although the Court finds that the combination of the power accorded to the CFPB Director and the limitations on the President's removal powers violate Article II of the Constitution, these constitutional concerns do not prevent the CFPB from prosecuting this case and do not warrant dismissal of the Complaints.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| | CV 16-2724 PSG (Ex) | | |
| | CV 16-2725 PSG (Ex) | | |

| Title | CFPB v. D and D Marketing *et al.* |
|---|---|
| | CFPB v. Fomichev |
| | CFPB v. Gasparyan |

2.   The CFPA and the CFPB provided adequate notice of conduct that is "unfair" or "abusive," the CFPA is not unconstitutionally vague, and the CFPB did not abuse its discretion by choosing to enforce the CFPA through adjudications rather than rulemaking.

3.   T3 is a service provider as contemplated by the CFPA.

4.   Interpreting the Complaints in Plaintiff's favor, the Complaints state violations under the CFPA and plead sufficient facts to raise a plausible inference that Defendants are liable for the conduct alleged.  The Complaints are not subject to a heightened pleading standard.

5.   The CFPB is entitled to the relief that it seeks because it can recover restitution, penalties, and costs under the CFPA.

6.   Plaintiff has not failed to join indispensable parties to the Gasparyan Complaint.

7.   Because the face of the Gasparyan Complaint does not allege a violation for conduct that occurred before April 2013, the Court cannot conclude that the Gasparyan Complaint is barred by the CFPA's three-year statute of limitations.

**IT IS SO ORDERED.**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-9692 PSG (Ex)<br>CV 16-2724 PSG (Ex)<br>CV 16-2725 PSG (Ex) | Date | November 17, 2016 |
|---|---|---|---|
| Title | CFPB v. D and D Marketing *et al.*<br>CFPB v. Fomichev<br>CFPB v. Gasparyan | | |