PATRICK M. KELLY (SBN 45426)
patrick.kelly@wilsonelser.com
HERBERT P. KUNOWSKI (SBN 150141)
herbert.kunowski@wilsonelser.com
ROBERT COOPER (SBN 209641)
robert.cooper@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071
Telephone:   213.443.5100
Facsimile:   213.443.5101

ASHLEY VINSON CRAWFORD (SBN 257246)
avcrawford@akingump.com
DANIELLE C. GINTY (SBN 261809)
dginty@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, CA 94014
Telephone:   415.765.9500
Facsimile:   415.765.9501

Attorneys for Defendants,
D and D Marketing, Inc., d/b/a T3Leads,
Grigor Demirchyan, and Marina
Demirchyan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No.        2:15-cv-09692-PSG(Ex) |
| | Hon. Philip S. Gutierrez |
| *Plaintiff,* | **(1) DEFENDANTS' NOTICE OF MOTION & MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY; (2) [PROPOSED] ORDER** (Lodged Separately) |
| v. | |
| D and D Marketing, Inc., d/b/a T3Leads, Grigor Demirchyan, and Marina Demirchyan, | Hearing Date:     March 6, 2017 |
| | Hearing Time:     1:30 p.m. |
| | Courtroom:         6A |
| | Courthouse:       First Street |
| *Defendants.* | |

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

Notice is hereby given that Defendants D and D Marketing, Inc., d/b/a T3 Leads ("D&D"), Grigor Demirchyan ("Grigor"), and Marina Demirchyan ("Marina") (collectively "Defendants") hereby move the Court for certification that the Court's November 17, 2016 order denying Defendants' motion to dismiss is appropriate for an immediate, interlocutory appeal. 28 U.S.C. § 1292(b). This motion will be heard on March 6, 2017 at 1:30 p.m. in the United States District Court, Central District of California, First Street Courthouse, located at 350 W. First Street, Los Angeles, CA 90012, by the Honorable Philip S. Gutierrez in Courtroom 6A. In addition, Defendants move for a stay of the District Court proceedings pending the completion of the appellate proceedings.

This motion is based on the controlling questions of law as to which there is substantial ground for difference of opinion. In addition, an immediate appeal will materially advance the ultimate disposition of this litigation. Accordingly, Defendants will ask the District Court to certify the following questions for review:

1)      Given the Court's holding that the Bureau is unconstitutionally structured, what is the proper remedy for this constitutional defect?

2)      Whether a party is barred from advancing an as-applied challenge to the constitutionality of a statute, based on the premise that the statute is not facially vague, where a novel interpretation of the statute may encourage its discriminatory enforcement? A subsidiary, threshold question is the proper test for evaluating such challenges.

This motion is based on the fact that further proceedings in this litigation will be burdensome and extremely expensive, both for the parties and for the District Court. The relief requested is further justified because this Court's order addressed legal issues of substantial practical importance and widespread applicability with significant implications for the entire financial services industry, thus warranting interlocutory appellate review.

1

1   Finally, because a post-trial appeal of this Court's final judgment will be
2   required by the losing party, permitting an immediate appeal of the Court's ruling
3   would promote, rather than undermine, judicial economy by preventing protracted
4   and costly discovery and an unnecessary trial and subsequent appeal. Interlocutory
5   review is thus absolutely necessary.

6   The Motion is made following conferences of counsel, pursuant to C.D. Cal.
7   R. 7-3, which took place on December 13 and 16, 2016. The Motion will be made
8   based upon this notice, the attached motion, and the District Court's November 17,
9   2016 order, as well as the records contained in the Court's file in this matter
10   (including the related two actions against co-Defendants Dmitry Formichev and
11   Davit Gasparyan), and such further evidence, whether documentary or oral, as may
12   be presented by the time of the noticed hearing.

13
14   Respectfully submitted,

15   DATED: December 27, 2016   WILSON, ELSER, MOSKOWITZ,
16   EDELMAN & DICKER LLP

17
18   By: /s/ Robert Cooper
19   Robert Cooper
     Attorneys for Defendants,
20   D and D Marketing, Inc., d/b/a T3Leads,
     Grigor Demirchyan, and Marina
21   Demirchyan

22
23
24
25
26
27
28

2

# TABLE OF CONTENTS

Page

I.  The Parties ..............................................................................................1

II.  Procedural Background...........................................................................1

    A.  The operative complaint .................................................................1

    B.  The motion to dismiss.....................................................................1

    C.  The Court's ruling on Defendants' motion to dismiss....................2

    D.  The urgent need for appellate review .............................................3

III.  LEGAL DISCUSSION ...........................................................................4

    A.  Given this Court's holding that the Bureau's structure violates
        the constitution, the Court should certify the related question
        regarding the proper remedy for this constitutional defect..............5

        1.  The proper remedy for the Bureau's unconstitutional
            structure presents a controlling legal issue.............................5

        2.  A substantial basis exists for difference of opinion
            regarding the proper remedy for the constitutional defect
            found by the Court....................................................................8

        3.  Resolution of the proper remedy for the Bureau's
            unconstitutional structure would materially advance the
            litigation..................................................................................9

    B.  In addition, the Court should certify the constitutional questions
        presented under the void-for-vagueness doctrine. ..........................11

        1.  Identifying and applying the proper test to evaluate
            Defendants' vagueness argument presents another
            controlling legal question. ......................................................11

        2.  A substantial basis exists for difference of opinion
            regarding the constitutional due process issue presented
            here..........................................................................................12

        3.  Resolution of the void-for-vagueness issue would
            materially advance the litigation............................................15

C.   In addition to certifying its decision for interlocutory appellate review, this Court should stay further proceedings in this court pending the completion of appellate proceedings. .........................15

1.   The balance of hardships tips decidedly in favor of a stay pending the resolution of appellate proceedings. Otherwise, Defendants will suffer irreparable injury. ..........16

2.   Serious questions are presented by Defendants' request for interlocutory appeal. ......................................................17

3.   The public interest weighs in favor of a stay........................17

**IV.   CONCLUSION** ..........................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allen v. Wright*,
  468 U.S. 737 (1984) ................................................................5

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...........................................16

*BMW of North America, Inc. v. Gore*,
  517 U.S. 559 (1996) ...........................................................15

*Bond v. United States*,
  131 S. Ct. 2355 (2011) ..........................................................7

*Bouie v. City of Columbia*,
  378 U.S. 347 (1964) .......................................................14, 15

*Brown v. Gardner*,
  513 U.S. 115 (1994) ..............................................................7

*CFPB v. Gordon*,
  819 F.3d 1179 (9th Cir. 2016) ..............................................9

*Clinton v. City of New York*,
  524 U.S. 417 (1998) ...........................................................7, 8

*Connally v. General Construction Co.*,
  269 U.S. 385 (1926) ............................................................14

*E. & J. Gallo Winery v. EnCana Corp.*,
  503 F.3d 1027 (9th Cir. 2007) ..............................................5

*Federal Election Comm'n v. NRA Political Victory Fund*,
  6 F.3d 821 (D.C. Cir. 1993) ...............................................6, 9

*Filtrol Corp. v. Kelleher*,
  467 F.2d 242 (9th Cir. 1972) ..............................................16

*Giacco v. Pennsylvania*,
  382 U.S. 399 (1966) ............................................................14

*Hill v. Colorado*,
  530 U.S. 703 (2000) ............................................................13

DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY
2642701v.1

*INS v. Chadha*,
   462 U.S. 919 (1983) ............................................................................. 8

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991)....................................................... 6, 10

*Johnson v. United States*,
   135 S. Ct. 2551 (2015) ................................................................... 12

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ....................................................................... 13

*Kuehner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996)............................................................ 10

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011).......................................................... 16

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979).......................................................... 15

*Marbury v. Madison*,
   5 U.S. 137 (1803) ............................................................................. 7

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*,
   496 U.S. 18 (1990) ........................................................................... 6

*Mistretta v. United States*,
   488 U.S. 361 (1989) ......................................................................... 7

*New York v. United States*,
   505 U.S. 144 (1992 .......................................................................... 9

*Palmer v. A.H. Robins Co.*,
   684 P.2d 187 (Colo. 1984) ............................................................. 12

*Papachristou v. City of Jacksonville*,
   405 U.S. 156 (1972) ....................................................................... 13

*Perez v. Mortg. Bankers Ass'n*,
   135 S. Ct. 1199 (2014) ................................................................... 14

*PHH Corporation v. CFPB*,
   839 F.3d 1 (D.C. Cir. 2016) .......................................................... 2, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rabe v. Washington*,
   405 U.S. 313 (1972) ................................................................. 15

*Rapanos v. United States*,
   547 U.S. 715 (2006) ................................................................. 7

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ................................................. 8, 9

*Rodriguez v. Banco Cent.*,
   917 F.2d 664 (1st Cir. 1990) ................................................... 6

*Shurance v. Planning Control Int'l, Inc.*,
   839 F.2d 1347 (9th Cir. 1988) ............................................... 10

*Smith v. Goguen*,
   415 U.S. 566 (1974) ............................................................... 13

*State of Calif. Dept. of Toxic Substances*
   *Control v. Hearthside Residential Corp.*,
   613 F.3d 910 (9th Cir. 2010) ................................................ 10

*Steering Committee v. United States*,
   6 F.3d 572 (9th Cir. 1993) ..................................................... 10

*Summit Petroleum Corp. v. E.P.A.*,
   690 F.3d 733 (6th Cir. 2012) ................................................. 7

*Talk Am., Inc. v. Mich. Bell Tele. Co.*,
   564 U.S. 50 (2011) ................................................................. 14

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ............................................... 10

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
   219 F.3d 605 (7th Cir. 2000) ................................................... 5

*United States v. Hariss*,
   347 U.S. 612 (1954) ............................................................... 13

*United States v. Virginia*,
   518 U.S. 515 (1996) ................................................................. 6

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) ....................................................... 3, 11, 12

# Statutes

12 U.S.C.

    § 5481 ................................................................................................ 1

    § 5497(a)(2)(C)............................................................................... 14

28 U.S.C.

    § 1292 ............................................................................................. 12

    § 1292(b) ..........................................................................4, 5, 9, 10

# Rules

Fed. R. App. Proc. 5(a)(3) ............................................................ 18

# Other Authorities

16 Charles Alan Wright & Arthur R. Miller,
   Federal Practice & Procedure (3d ed. 1998)

    § 3929 ............................................................................................. 4

    § 3930 ........................................................................................... 16

## MEMORANDUM OF POINTS & AUTHORITIES

### I.     The Parties

D&D is a lead aggregator that is in the business of receiving consumer data from lead generators, and selling the data as leads to small-dollar lenders and other lead purchasers. D&D's automated "ping tree" system matches the leads to parameters set by independent lenders and other lead purchasers to whom D&D sells the leads. A consumer who submits information on a lead generator's webpage is directed, through D&D's ping tree, to a lender's webpage as soon as possible (if the lender chooses to accept the consumer data), where the consumer can review the terms of the offered loan and ultimately decide whether to proceed with the loan transaction. Grigor and Marina are the two current principals of D&D.

The Consumer Financial Protection Bureau ("Bureau") is a federal agency, recently created by Congress to enforce the Consumer Financial Protection Act (the "CFPA"), 12 U.S.C. § 5481 et seq.

### II.    Procedural Background

#### A.     The operative complaint

The Bureau has sued D&D and its principals under the CFPA, seeking monetary damages, restitution, disgorgement and injunctive relief among other remedies. Claiming that D&D's business model is "unfair" and "abusive" in violation of the CFPA, the Bureau claims that D&D is obligated to monitor the independent lead generators and lead purchasers with whom D&D does business to ensure that those third parties do not violate the CFPA. The Bureau's vicarious liability theory is premised on its view that the loans provided by third party lenders are inconsistent with the terms and conditions initially disclosed to consumers by third party lead generators.

#### B.     The motion to dismiss

In response to this lawsuit, Defendants filed a motion to dismiss. In addition

to challenging the Bureau's allegations based on lack of legal authority to proceed with this action in light of its unconstitutional structure, Defendants argued that imposing liability would violate Defendants' due process rights due to lack of prior notice on Defendants' alleged duty to monitor third parties. [1] Defendants also argued that adoption of the Bureau's novel interpretation of the CFPA would render the CFPA unconstitutionally vague as applied to Defendants.

## C.   The Court's ruling on Defendants' motion to dismiss

Despite adopting Defendants' view that the Bureau's structure is constitutionally flawed, the Court nonetheless denied Defendants' motion to dismiss. (D.E. 57, pp. 6-8.) While acknowledging the split of authority "across the country" regarding "whether the structure of the CFPB—particularly the powers accorded to the Director—violates Article II of the Constitution" (*id.*, p. 5.), this Court held that the "CFPB may continue to perform its duties, including the prosecution of this case against Defendants[.]" (*Id.* at p. 8.) The Court reasoned that, consistent with the D.C. Circuit's recent decision in *PHH Corporation v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016) (petition for rehearing en banc filed Nov. 18, 2016), the statutory limitation on the President's power to remove the Bureau's director can be severed from the law, thus preserving the Bureau's ability to prosecute lawsuits. (D.E. 57, pp. 7-8.)

In addition, this Court rejected Defendants' argument that they lacked adequate notice that their conduct violated the CFPA. Addressing a facial challenge and an as-applied challenge to CFPA, the Court held that there is no constitutional vagueness infirmity here. *Id.* at pp. 9-13. The Court reasoned that "economic regulation is subject to a less strict vagueness test because its subject

---

[1] Defendants incorporated by reference the constitutional argument that was presented by co-Defendant Formichev in one of the two other related lawsuits that was the subject of this Court's November 17, 2016 order. (D.E. 48, p. 1; CV 16-2724 PSG (Ex); D.E. 57, p. 1.)

matter is often more narrow and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id*. at p. 10 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498 (1982)). Invoking the cases decided under the Federal Trade Commission Act, the Court held that the case law under that statutory scheme provides adequate guidance to the public regarding the statutory terms used in the CFPA. (D.E. 57, pp. 10-11.) The Court also held that the CFPB had provided additional guidance to businesses in 2012 regarding its duty-to-monitor theory presented here. *Id*. at pp. 11-12. Finally, the Court held that even if the Bureau is advancing a new interpretation of the law, "due process concerns do not preclude an agency from prosecuting 'borderline cases.'" *Id*. at p. 12. Accordingly, the Court denied Defendants' motion to dismiss. [2]

### D.     The urgent need for appellate review

Given the adverse ramifications of the Court's holding, and its significance to the bench and bar, immediate appellate review of this Court's order is necessary. Based on the Bureau's attempt to obtain a judgment for millions of dollars against Defendants, in the absence of appellate review at this stage, Defendants' right to meaningful appellate review would be severely compromised – if not eliminated – based on their inability to post a multi-million dollar, post-judgment appeal bond.[3]

Appellate resolution of the constitutionality issues presented under the CFPA is particularly appropriate here because the structural validity of the Bureau is at issue in this case. If the Court of Appeals adopts Defendants' position that the Bureau's unconstitutionality precludes the Bureau from proceeding with this

---

[2] While Defendants raised additional grounds in their motion to dismiss, those grounds are not advanced in this motion.

[3] Defendants are being sued with respect to hundreds of thousands of separate loan transactions. (D.E. 37, ¶ 35.)

DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY
2:15-cv-09692-PSG(Ex)
2642701v.1

lawsuit, the case would necessarily be terminated, thus conserving significant judicial resources. In addition to its dispositive impact on this lawsuit, appellate resolution of these issues affects the entire financial services industry—a result with significant legal and practical consequences. Accordingly, based on the grounds articulated below, the Court should certify its order for appellate review in addition to staying further proceedings in this Court pending disposition of the appeal.

## III.   <u>LEGAL DISCUSSION</u>

The interlocutory appeal statute that is the subject of this motion provides in pertinent part as follows:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).

As discussed below, both of the questions presented here satisfy the statutory criteria for interlocutory review. Therefore, the Court should certify both questions. "A district-court order certifying a § 1292(b) appeal should state the reasons that warrant appeal as a guide to court of appeals consideration of the

petition for permission to appeal." 16 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3929 (3d ed. 1998).

     **A.**    **Given this Court's holding that the Bureau's structure violates the constitution, the Court should certify the related question regarding the proper remedy for this constitutional defect.**

          **1.**    **The proper remedy for the Bureau's unconstitutional structure presents a controlling legal issue.**

In order to satisfy the first statutory requirement, the case must present "a controlling question of law." 28 U.S.C. § 1292(b). The threshold issue presented here – the practical impact of the Court's finding that the Bureau's structure is unconstitutional – is, in essence, one of standing—or, more accurately, the lack thereof. If the Court of Appeals adopts Defendants' position that such a constitutional violation precludes the Bureau from proceeding with this lawsuit, the prosecution of this lawsuit would necessarily be preempted. After all, "federal courts may exercise power … only when adjudication is 'consistent with a system of separated powers[.]'" *Allen v. Wright*, 468 U.S. 737, 752 (1984) (addressing requirements for standing) (citation omitted).

Questions of law that meet the "controlling question of law" requirement include any number of issues that preclude the imposition of liability. While there are numerous legal questions that may ultimately preclude liability – e.g., lack of standing, preemption, statute of limitations, inability to satisfy the proper standard of proof, etc. – all such issues present "controlling questions of law" that have justified interlocutory appeals. See, e.g., *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 608 (7th Cir. 2000) (entertaining interlocutory appellate review to decide whether federal law preempts state business-tort law); see also *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1032–1033 (9th Cir. 2007) (district court order based on the filed rate doctrine, barring challenges under state law to

rates set by federal agencies, was certified because application of the doctrine to the case involved a controlling question of law); *Johnson v. Burken,* 930 F.2d 1202, 1205 (7th Cir. 1991) (appellate review of the standard of proof under relevant statute); *Rodriguez v. Banco Cent*., 917 F.2d 664, 665 (1st Cir. 1990) (interlocutory review of accrual of a RICO cause of action for statute of limitations purposes) (Breyer, C.J.)).

Applying these cases here, the standing issue raised here – whether the Bureau has the legal power to prosecute this lawsuit despite its unconstitutional structure – qualifies as a controlling legal question because its resolution will inevitably affect the future course of this litigation. The Bureau "lacks authority to bring this enforcement action because its composition violates the Constitution[al]" provisions discussed above. *Federal Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993). Therefore, the first statutory requirement for certification is met here.

Otherwise, adoption of the no-harm, no-foul view advanced by the Bureau would nullify the significance of the constitutional provision that the Court found to have been violated. Rather than adopting the Bureau's dismissive approach, the Supreme Court has held that remedies for constitutional violations should return one who was unconstitutionally denied an opportunity to the same position he would have occupied in the absence of the constitutional violation. See *United States v. Virginia,* 518 U.S. 515, 547 (1996) (the proper remedy for unconstitutional exclusion of women from educational opportunity is to remedy the discriminatory effects of the past and to "bar like discrimination in the future") (internal citations omitted). In other words, the Constitution demands that the remedy be tailored to the violation. See *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 22, 31 (1990) (if a state collects a tax that discriminates against interstate commerce, the Due Process Clause mandates that the state provide backward-looking relief that fully removes the discriminatory

1  effects of the unconstitutional tax); *Marbury v. Madison*, 5 U.S. 137, 163 (1803)
2  (there must be a proper remedy for the violation of a vested legal right).

3      The only proper remedy for the constitutional violation found by this Court,
4  based on the plaintiff's flawed structure, is the dismissal of this lawsuit. Without a
5  properly-constituted body, plaintiff has no legal capacity or standing to bring this
6  action in the first place. This result is mandated by the rule that "[i]f the
7  constitutional structure of our Government that protects individual liberty is
8  compromised, individuals who suffer otherwise justiciable injury may object."
9  *Bond v. United States*, 131 S. Ct. 2355, 2365 (2011); see also *Clinton v. City of*
10 *New York*, 524 U.S. 417, 450 (1998) ("Liberty is always at stake when one or more
11 of the branches seek to transgress the separation of powers") (Kennedy, J.,
12 concurring). There is no point in objecting if such constitutional errors can be
13 tossed aside as merely harmless.

14     While the Bureau has managed to prosecute numerous lawsuits during the
15 past few years without any consequence despite its flawed structure, that does not
16 justify denying the relief requested here. Just as "[a] regulation's age is no antidote
17 to clear inconsistency with a statute" (*Brown v. Gardner*, 513 U.S. 115, 122
18 (1994)), the Bureau "may not insulate itself from correction merely because it has
19 not been corrected soon enough," *Summit Petroleum Corp. v. E.P.A.*, 690 F.3d
20 733, 746 (6th Cir. 2012). That "sort of [multi]-year adverse possession …
21 deservedly has no precedent in our jurisprudence." *Rapanos v. United States*, 547
22 U.S. 715, 752 (2006) (plurality op.). Consistent with Defendants' view, the
23 Supreme Court has "not hesitated to strike down provisions of law that either
24 accrete to a single Branch powers more appropriately diffused among separate
25 Branches or that undermine the authority and independence of one or another
26 coordinate Branch." *Mistretta v. United States*, 488 U.S. 361, 382 (1989).

27     In sum, there are certain constitutional errors that are inherently structural –
28 e.g., the denial of the right to a jury trial or an accused's right to counsel – such

that their denial is reversible per se. The error found by this Court fits this category. At a minimum, this presents a controlling legal question that justifies interlocutory review.

### 2.    A substantial basis exists for difference of opinion regarding the proper remedy for the constitutional defect found by the Court.

With respect to the second criterion for certification, substantial grounds for difference of opinion exist where reasonable jurists might disagree on the resolution of an issue. This factor can be satisfied by demonstrating that either (a) the appeal presents a novel issue on which fair-minded jurists might differ or (b) courts that have considered the issue are divided. See *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 688 (9th Cir. 2011). Both of these alternatives are satisfied here.

While the *PHH* court did not "consider the legal ramifications of [its] decision for past CFPB rules or for past agency enforcement actions" (*PHH,* 839 F.3d at 39, fn. 19), the impact of the Bureau's unconstitutional structure is an issue on which fair-minded jurists can disagree. For example, the Bureau's attempt to relegate the constitutional defect at issue here to a harmless error category is based on the premise of administrative efficiency. While adoption of Defendants' view may admittedly cause administrative inefficiency in light of the pending lawsuits filed by the Bureau, administrative efficiency is never a reason to withhold the proper remedy when a constitutional violation is established. "The Constitution's structure requires a stability which transcends the convenience of the moment." *Clinton,* 524 U.S. at 449 (Kennedy, J., concurring). "[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *INS v. Chadha*, 462 U.S. 919, 944 (1983). Rather, "the Constitution protects us

from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." *New York v. United States*, 505 U.S. 144, 187 (1992). Therefore, once the Court adopted Defendants' position that the Bureau is structurally defective, the Court's failure to allow a proper remedy for this violation presents a novel issue on which fair-minded jurists can disagree. This is further evidenced by the contrary view endorsed in other cases. See *NRA Political Victory Fund*, 6 F.3d at 822 ("appellants raise the constitutional challenge as a defense to an enforcement action, and we are aware of no theory that would permit us to declare the Commission's structure unconstitutional without providing relief to the appellants in this case"); see also *CFPB v. Gordon*, 819 F.3d 1179, 1198-1204 (9th Cir. 2016) (Ikuta, J., dissenting) (adopting the appellant's view and rejecting the majority's view regarding the legal effect of the unconstitutional recess appointment of the CFPB's director).

In sum, the no-harm, no-foul view advanced by the Bureau cries out for interlocutory review. The second criterion under section 1292(b) is satisfied here.

### 3. Resolution of the proper remedy for the Bureau's unconstitutional structure would materially advance the litigation.

As discussed above, before certifying an appeal under section 1292(b), the Court must determine whether the interlocutory appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). However, there is no requirement "that the interlocutory appeal have a final, dispositive effect on the litigation[.]" *Reese,* 643 F.3d at 688. This is consistent with the permissive language used by the statute -- that "an immediate appeal from the order *may* materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

2642701v.1

If "interlocutory reversal *might* save time for the district court, and time and expense for the litigants," appellate review should be entertained. *Johnson,* 930 F.2d at 1206 (emphasis added) (addressing the related issue as to what constitutes a controlling question of law); *id.* at 1205 (noting that threshold questions, by their nature, "may materially advance the ultimate termination of the litigation"); see also *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (order requiring parties to arbitrate involved "controlling question of law" even though, by its nature, the order could not have disposed of the case).

Applying these principles, district court decisions on motions to dismiss can be ideal candidates for appeal pursuant to section 1292(b). See *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) (denial of dismissal motion based on personal jurisdiction and forum non conveniens issues). Appellate resolution of liability issues, when presented prior to a damages determination, materially advances the ultimate disposition of the litigation; e.g., an immediate appeal that results in reversal of a district court decision finding liability avoids unnecessary delay and expense in taking evidence on the damages issues. See *Steering Committee v. United States*, 6 F.3d 572, 575 & fn. 1 (9th Cir. 1993); see also *State of Calif. Dept. of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912-913 (9th Cir. 2010) (appellate review entertained under § 1292(b) to determine as a matter of first impression that "owner and operator" liability for CERCLA cleanup costs lies with owner at the time such costs are incurred). Finally, because no trial date has been set, this fact further justifies the need for certification. See *Shurance v. Planning Control Int'l, Inc.,* 839 F.2d 1347, 1348 (9th Cir. 1988) (relief denied under section 1292(b) where trial was scheduled to begin months later).

*  *  *  *

Based on the foregoing analysis, all of the requirements for certification are met here, thus justifying interlocutory appellate review as to the first issue presented. In fact, it is in the interest of *both sides* to obtain interlocutory relief at this time. Given the Court's adoption of some of the arguments presented by each side, both sides need to obtain the authoritative view of the Court of Appeals before the case progresses further. Putting aside the effect of a debatable lower court ruling on the dynamics of settlement negotiations, both sides have a similar interest in conserving time and money on a trial that leads to a judgment that may be reversed due to an erroneous ruling on a controlling question of law.

An interlocutory appeal will achieve significant efficiencies, by moving the litigation towards resolution more quickly and by saving costs and promoting judicial economy. Therefore, the motion for certification should be granted on the first issue presented.

**B.  In addition, the Court should certify the constitutional questions presented under the void-for-vagueness doctrine.**

**1.  Identifying and applying the proper test to evaluate Defendants' vagueness argument presents another controlling legal question.**

The Bureau successfully argued in this case that *Hoffman Estates,* 455 U.S. 489 imposes a low-threshold test in evaluating Defendants' due process argument based on the vagueness doctrine. (D.E. 48, p. 5.) The Court adopted the Bureau's view (D.E. 57, p.10), rejecting Defendants' constitutional argument.

This legal analysis satisfies the first requirement for interlocutory appeal because the legal issue presented here – the proper test for evaluating the void-for-vagueness challenge – is a controlling legal question. While the Bureau relied on *Hoffman Estates,* the validity of that obsolete decision and its application here are highly suspect. That case held that, in evaluating vagueness challenges, "assuming the enactment implicates no constitutionally protected conduct," the court should

uphold the challenge "only if the enactment is impermissibly vague in all of its applications." *Hoffman Estates,* at 494-495 & fn. 7. Here, however, while false advertising is admittedly not a constitutionally protected category of speech, the remaining allegations presented here are not immune from such constitutional scrutiny.[4] In sum, the initial inquiry in identifying the proper test for evaluating Defendants' void-for-vagueness argument presents a controlling legal question, thus satisfying the first requirement under section 1292.

### 2. A substantial basis exists for difference of opinion regarding the constitutional due process issue presented here.

In attacking Defendants' as-applied challenge, the Bureau successfully argued that "the CFPA is explicit in its prohibition of unfair and abusive acts and practices, and the statute itself sets forth the elements of both claims. Defendants have therefore had notice of the elements of prohibited conduct since … the date the CFPA became law." (D.E. 48, p. 4.) Judging by this argument (which was adopted by the Court), the Bureau believes that facial validity of a statute necessarily precludes a party from presenting an as-applied challenge.

While some courts have adopted the Bureau's approach, it is analytically flawed. In *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984), for example, the Colorado Supreme Court examined the language of the state's punitive damages statute in evaluating whether the application of that statute – whose facial validity was also challenged – violated the defendant's due process rights. *Id.* at 214-215.

---

[4] Moreover, the test adopted in *Hoffman Estates* is obsolete in light of the recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). As Justice Scalia explained in the majority opinion, the Court's decisions "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 2561; see also *id.* at 2580 (confirming that the majority has jettisoned the test adopted in *Village of Hoffman Estate*) (Alito, J., dissenting).

While that court adopted the Bureau's analytical approach in evaluating as-applied challenges (by examining the statutory language), this approach ignores the basic rule that a statute may be unconstitutional as applied, even if it is facially valid. (D.E. 57, pp. 10-11.)

This Court's ruling further highlights the need for appellate review on this point. In rejecting Defendants' as-applied challenge, the Court cited case law from the FTCA context to point out prior judicial interpretations of the statutory terms under the FTCA, focusing on whether Defendants were on notice regarding what the statutory language required. (D.E. 57, p. 10.) The Court's reasoning, however, did not address the more critical aspect of the vagueness doctrine.

A law can be unconstitutionally vague "for either of two independent reasons." *Hill v. Colorado,* 530 U.S. 703, 732 (2000). A law is impermissibly vague "if it authorizes or even encourages arbitrary and discriminatory enforcement," *id.*, *Kolender v. Lawson,* 461 U.S. 352, 357-358 (1983), or if it "fails to give a person of ordinary intelligence fair notice" of what is prohibited, *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162 (1972) (quoting *United States v. Hariss,* 347 U.S. 612, 617 (1954)).

While the Court addressed the second flaw, even if we assume the Bureau's interpretation of the statutory law is correct, the CFPA statute is nonetheless invalid because it encourages discriminatory enforcement. Under this "more important aspect of the vagueness doctrine" (*Kolender,* 461 U.S. at 357-358 (citing *Smith v. Goguen,* 415 U.S. 566, 574 (1974)), a law is impermissible if it allows or encourages law enforcement to administer the law – e.g., based on their own eye-of-the-beholder test in interpreting or applying the law – as they see fit. This concern is so critical that the identity of the decision-maker (an administrative agency, the court or the jury) does not sanitize or eliminate the potential arbitrary enforcement of an otherwise valid statute. See, e.g., *Papachristou v. City of Jacksonville,* 405 U.S. 156, 170 (1972) (finding Florida vagrancy statute

unconstitutionally vague in part due to the arbitrariness it permits by "police and the courts"); *Giacco v. Pennsylvania*, 382 U.S. 399, 402-03 (1966) (statute leaves "judges and jurors" too much discretion); *Connally v. General Construction Co.*, 269 U.S. 385, 392 (1926) (noting that a statute's critical terms must be sufficiently clear because an "important element cannot be left to conjecture, or be supplied by either the court or the jury") (internal citation omitted).

With respect to the risk of arbitrary enforcement, neither the prior FTCA cases nor the CFPB's guidelines (D.E. 57, pp. 11-12) eliminate the practical, legal implication of the new interpretation of the law advanced by the CFPB. To the contrary, the Bureau's unilateral power to obtain significant funding without traditional congressional oversight (12 U.S.C. § 5497(a)(2)(C)) exacerbates the risk of arbitrary enforcement in the absence of financial accountability. Far from resolving those concerns, the self-generated guidelines of the CFPB create other constitutional cans of worms because it is "contrary to fundamental principles of separation of powers to permit the person who promulgates a law to interpret it as well." *Talk Am., Inc. v. Mich. Bell Tele. Co.*, 564 U.S. 50, 68 (2011) (Scalia, J., concurring); accord, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1217-1220 (2014) (Thomas, J., concurring in the judgment) (explaining the separation-of-powers concerns with adopting an agency's interpretation of the law).

In any event, even if we assume that the CFPA statute is not ambiguous, Defendants cannot be held liable in this case due to the Bureau's novel *interpretation* of that non-ambiguous law. Here's why:

In *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the Supreme Court recognized that even if the text of the applicable statute is clear, where the statute is "unforeseeably and retroactively expanded by judicial construction," this presents a "potentially greater deprivation of the right to fair notice" than the garden-variety vagueness case where "the uncertainty ... resulted from vague or overbroad language in the statute itself." *Id.* at 351-352 (internal citations omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, even if we accept the Bureau's argument that the statute is not vague, Defendants cannot be held liable in this case. See *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574, fn. 22 (1996) (noting that, under *Bouie*, "retroactive application of new construction of statute violate[s] due process"); see also *Rabe v. Washington*, 405 U.S. 313, 315-316 (1972) (conviction reversed on vagueness ground where state Supreme Court's interpretation failed to give defendant "fair notice that criminal liability is dependent upon" the location where the allegedly obscene film was displayed by defendant).

To summarize, the constitutional due process issues presented here satisfy the second requirement for interlocutory review of the void-for-vagueness issue.

### 3.    Resolution of the void-for-vagueness issue would materially advance the litigation.

If the Court of Appeals adopts Defendants' void-for-vagueness argument, the net effect of that holding would be the entry of judgment in Defendants' favor. After all, if Defendants' due process rights were violated based on the grounds invoked by Defendants, the Bureau cannot pursue this lawsuit. The resolution of this dispositive issue would necessarily advance the litigation by terminating this lawsuit, thus satisfying the last requirement for interlocutory review.

### C.    In addition to certifying its decision for interlocutory appellate review, this Court should stay further proceedings in this court pending the completion of appellate proceedings.

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." See *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "Where it is proposed that a pending proceeding be stayed, the competing interests which will

be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (internal quotation marks and citations omitted).

Under this balancing test, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (addressing preliminary injunction standard). It is "clear," however, that "to justify a stay, petitioners need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) (stay of removal). Applying these principles here, this Court should issue a stay based on the following analysis in order to "promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp.,* 467 F.2d at 244.

### 1. The balance of hardships tips decidedly in favor of a stay pending the resolution of appellate proceedings. Otherwise, Defendants will suffer irreparable injury.

Absent a stay, the parties will be forced to continue forward with merits-based discovery, not to mention motion practice and extensive trial preparations. The burdens attendant with that discovery, motion and trial preparation will be particularly acute, given the large universe of documents previously sought by the Bureau during the administrative phase of this case. In addition, Defendants will need to seek comparably extensive discovery in connection with the issues of liability and damages.

"The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling." Wright & Miller, supra, § 3930. Here, that balance weighs decisively toward certification and stay. Prompt reversal of the order would render unnecessary virtually all of this litigation, substantially lessening the burdens on both the parties and the Court. Given the relatively early stage of this complicated, fact-intensive case involving numerous witnesses and a large universe of documents, an interlocutory appeal would not prejudice the Bureau.

### 2. Serious questions are presented by Defendants' request for interlocutory appeal.

Defendants have a sufficient likelihood of success on the merits to support the issuance of a stay because their threshold arguments raise serious legal questions in terms of the application of the pertinent provisions of the federal Constitution. As acknowledged by this Court, "the CFPB has provided much fodder for constitutional objection in the years since its creation," further underscoring the appropriateness of a stay in this case. (D.E. 57, p. 6.)

The constitutional issues, of course, are not only of substantial importance to the parties here, but to the entire financial services industry throughout the fifty states who are struggling with the Bureau's interpretation of the law. Given the serious and important questions raised by the Court's order, a stay is warranted.

### 3. The public interest weighs in favor of a stay.

Finally, a stay would serve important interests of sound and fair judicial administration. The public interest lies in proper resolution of the important issues raised in this case, and issuance of stay would avoid wasting resources on a lawsuit which might be dismissed on appeal.

Otherwise, based on Defendants' inability to obtain a likely multi-million dollar appeal bond, requiring Defendants to challenge an adverse judgment after a full-blown trial would undermine Defendants' right to a meaningful appeal. Forcing a party to incur the expense of litigation before its interlocutory appeal is heard may, in practice, render the appeal illusory or moot (e.g., if Defendants are forced into bankruptcy). As a result, the balance tips sharply in favor of a stay.

## IV.   <u>CONCLUSION</u>

Defendants respectfully seek certification by this Court in order to explore appellate review of the recent adverse ruling on their motion to dismiss. Accordingly, the motion should be granted. In lieu of amending its November 17, 2016 order by certifying that order for interlocutory appellate review (Fed. R. App. Proc. 5(a)(3)), the Court should adopt Defendants' proposed order. The Court should also stay further proceedings in this Court pending completion of appellate proceedings.

Respectfully submitted,

DATED: December 27, 2016      WILSON, ELSER, MOSKOWITZ,
                                  EDELMAN & DICKER LLP


                              By: */s/ Robert Cooper*
                                  Robert Cooper
                                  Attorneys for Defendants,
                                  D and D Marketing, Inc., d/b/a T3Leads,
                                  Grigor Demirchyan, and Marina
                                  Demirchyan