1  PATRICK M. KELLY (SBN 45426)
   patrick.kelly@wilsonelser.com
2  HERBERT P. KUNOWSKI (SBN 150141)
   herbert.kunowski@wilsonelser.com
3  ROBERT COOPER (SBN 209641)
   robert.cooper@wilsonelser.com
4  **WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
5  555 South Flower Street, Suite 2900
   Los Angeles, CA 90071
6  Telephone:   213.443.5100
   Facsimile:   213.443.5101
7
   ASHLEY VINSON CRAWFORD (SBN 257246)
8  avcrawford@akingump.com
   DANIELLE C. GINTY (SBN 261809)
9  dginty@akingump.com
   **AKIN GUMP STRAUSS HAUER & FELD LLP**
10 580 California Street, Suite 1500
   San Francisco, CA 94014
11 Telephone:   415.765.9500
   Facsimile:   415.765.9501
12
   Attorneys for Defendants,
13 D and D Marketing, Inc., d/b/a T3Leads,
   Grigor Demirchyan, and Marina
14 Demirchyan

15

16              UNITED STATES DISTRICT COURT

17             CENTRAL DISTRICT OF CALIFORNIA

18                    WESTERN DIVISION

19 Consumer Financial Protection Bureau, )  Case No.      2:15-cv-09692-PSG(Ex)
                                         )
20                                       )  Hon. Philip S. Gutierrez
                                         )
21              *Plaintiff,*             )  **[PROPOSED] ORDER ON**
                                         )  **DEFENDANTS' MOTION FOR**
22      v.                               )  **CERTIFICATION OF**
                                         )  **INTERLOCUTORY APPEAL &**
23                                       )  **CONCOMITANT STAY**
                                         )
24 D and D Marketing, Inc., d/b/a        )  Hearing Date:    March 6, 2017
   T3Leads, Grigor Demirchyan, and       )  Hearing Time:    1:30 p.m.
25 Marina Demirchyan,                    )  Courtroom:       6A
                                         )  Courthouse:      First Street
26                                       )
                                         )
27              *Defendants.*            )
                                         )
28 _____ )

---

Defendants D and D Marketing, Inc., d/b/a T3 Leads ("D&D"), Grigor Demirchyan ("Grigor"), and Marina Demirchyan ("Marina") (collectively "Defendants") have filed a motion for certification that the Court's November 17, 2016 order denying their motion to dismiss is appropriate for an immediate, interlocutory appeal. 28 U.S.C. § 1292(b). In addition, Defendants have moved for a stay of the District Court proceedings pending the completion of the appellate proceedings.

Having entertained the arguments presented by paper and in person by both sides, the Court hereby **GRANTS** the motion.  Accordingly, the Court certifies the following questions for review by the Ninth Circuit:

1)    Given the Court's holding that the Bureau is unconstitutionally structured, what is the proper remedy for this constitutional defect?

2)    Whether a party is barred from advancing an as-applied challenge to the constitutionality of a statute, based on the premise that the statute is not facially vague, where a novel interpretation of the statute may encourage its discriminatory enforcement? A subsidiary, threshold question is the proper test for evaluating such challenges.

In support of its ruling, the Court finds that further proceedings in this litigation will be burdensome and extremely expensive, both for the parties and for the District Court. The relief requested is further justified because this Court's November 17, 2016 order addressed legal issues of substantial practical importance and widespread applicability with significant implications for the entire financial services industry, thus warranting interlocutory appellate review. Finally, because a post-trial appeal of this Court's final judgment will be required by the losing party, permitting an immediate appeal of the Court's ruling would promote, rather than undermine, judicial economy by preventing protracted and costly discovery and an unnecessary trial and subsequent appeal. The Court's ruling is based on the following analysis.

[PROPOSED] ORDER ON DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL &
CONCOMITANT STAY

## I.      The Parties

D&D is a lead aggregator that is in the business of receiving consumer data from lead generators, and selling the data as leads to small-dollar lenders and other lead purchasers. D&D's automated "ping tree" system matches the leads to parameters set by independent lenders and other lead purchasers to whom D&D sells the leads. A consumer who submits information on a lead generator's webpage is directed, through D&D's ping tree, to a lender's webpage as soon as possible (if the lender chooses to accept the consumer data), where the consumer can review the terms of the offered loan and ultimately decide whether to proceed with the loan transaction. Grigor and Marina are the two current principals of D&D.

The Consumer Financial Protection Bureau ("Bureau") is a federal agency, recently created by Congress to enforce the Consumer Financial Protection Act (the "CFPA"), 12 U.S.C. § 5481 et seq.

## II.      Procedural Background

### A.      The operative complaint

The Bureau has sued D&D and its principals under the CFPA, seeking monetary damages, restitution, disgorgement and injunctive relief among other remedies. Claiming that D&D's business model is "unfair" and "abusive" in violation of the CFPA, the Bureau claims that D&D is obligated to monitor the independent lead generators and lead purchasers with whom D&D does business to ensure that those third parties do not violate the CFPA. The Bureau's vicarious liability theory is premised on its view that the loans provided by third party lenders are inconsistent with the terms and conditions initially disclosed to consumers by third party lead generators.

### B.      The motion to dismiss

In response to this lawsuit, Defendants filed a motion to dismiss. In addition to challenging the Bureau's allegations based on lack of legal authority to proceed

1    with this action in light of its unconstitutional structure, Defendants argued that
2    imposing liability would violate Defendants' due process rights due to lack of prior
3    notice on Defendants' alleged duty to monitor third parties. [1] Defendants also
4    argued that adoption of the Bureau's novel interpretation of the CFPA would
5    render the CFPA unconstitutionally vague as applied to Defendants.

6             **C.    The Court's ruling on Defendants' motion to dismiss**

7            Despite adopting Defendants' view that the Bureau's structure is
8    constitutionally flawed, the Court nonetheless denied Defendants' motion to
9    dismiss. (D.E. 57, pp. 6-8.) While acknowledging the split of authority "across the
10   country" regarding "whether the structure of the CFPB—particularly the powers
11   accorded to the Director—violates Article II of the Constitution" (*id.*, p. 5.), the
12   Court held that the "CFPB may continue to perform its duties, including the
13   prosecution of this case against Defendants[.]" (*Id.* at p. 8.) The Court reasoned
14   that, consistent with the D.C. Circuit's recent decision in *PHH Corporation v.*
15   *CFPB*, 839 F.3d 1 (D.C. Cir. 2016) (petition for rehearing en banc filed Nov. 18,
16   2016), the statutory limitation on the President's power to remove the Bureau's
17   director can be severed from the law, thus preserving the Bureau's ability to
18   prosecute lawsuits. (D.E. 57, pp. 7-8.)

19           In addition, the Court rejected Defendants' argument that they lacked
20   adequate notice that their conduct violated the CFPA. Addressing a facial
21   challenge and an as-applied challenge to CFPA, the Court held that there is no
22   constitutional vagueness infirmity here. *Id.* at pp. 9-13. The Court reasoned that
23   "economic regulation is subject to a less strict vagueness test because its subject
24   matter is often more narrow and because businesses, which face economic

---

25

26   [1] Defendants incorporated by reference the constitutional argument that was
27   presented by co-Defendant Formichev in one of the two other related lawsuits that
     was the subject of this Court's November 17, 2016 order. (D.E. 48, p. 1; CV 16-
28   2724 PSG (Ex); D.E. 57, p. 1.)

demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id*. at p. 10 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498 (1982)). Invoking the cases decided under the Federal Trade Commission Act, the Court held that the case law under that statutory scheme provides adequate guidance to the public regarding the statutory terms used in the CFPA. (D.E. 57, pp. 10-11.) The Court also held that the CFPB had provided additional guidance to businesses in 2012 regarding its duty-to-monitor theory presented here. *Id*. at pp. 11-12. Finally, the Court held that even if the Bureau is advancing a new interpretation of the law, "due process concerns do not preclude an agency from prosecuting 'borderline cases.'" *Id*. at p. 12. Accordingly, the Court denied Defendants' motion to dismiss. [2]

## III.   <u>LEGAL DISCUSSION</u>

The interlocutory appeal statute that is the subject of this motion provides in pertinent part as follows:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless

---

[2] While Defendants raised additional grounds in their motion to dismiss, those grounds are not advanced in their motion for certification.

the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).

As discussed below, both of the questions presented here satisfy the statutory criteria for interlocutory review. The Court hereby states "the reasons that warrant appeal as a guide to court of appeals consideration of the petition for permission to appeal." 16 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3929 (3d ed. 1998).

**A.    Given this Court's holding that the Bureau's structure violates the constitution, the Court certifies the related question regarding the proper remedy for this constitutional defect.**

**1.    The proper remedy for the Bureau's unconstitutional structure presents a controlling legal issue.**

In order to satisfy the first statutory requirement, the case must present "a controlling question of law." 28 U.S.C. § 1292(b). The threshold issue presented here – the practical impact of the Court's finding that the Bureau's structure is unconstitutional – is, in essence, one of standing—or, more accurately, the lack thereof. If the Court of Appeals adopts Defendants' position that such a constitutional violation precludes the Bureau from proceeding with this lawsuit, the prosecution of this lawsuit would necessarily be preempted. After all, "federal courts may exercise power … only when adjudication is 'consistent with a system of separated powers[.]'" Allen v. Wright, 468 U.S. 737, 752 (1984) (addressing requirements for standing) (citation omitted).

The standing issue raised here – whether the Bureau has the legal power to prosecute this lawsuit despite its unconstitutional structure – qualifies as a controlling legal question because its resolution will inevitably affect the future course of this litigation. If Defendants are correct, the Bureau "lacks authority to

1    bring this enforcement action because its composition violates the Constitution[al]"

2    provisions discussed above. *Federal Election Comm'n v. NRA Political Victory*

3    *Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993). Therefore, the first statutory requirement

4    for certification is met here.

5         Defendants have further argued that the Supreme Court has held that

6    remedies for constitutional violations should return one who was unconstitutionally

7    denied an opportunity to the same position he would have occupied in the absence

8    of the constitutional violation. See *United States v. Virginia,* 518 U.S. 515, 547

9    (1996) (the proper remedy for unconstitutional exclusion of women from

10   educational opportunity is to remedy the discriminatory effects of the past and to

11   "bar like discrimination in the future") (internal citations omitted). In other words,

12   the Constitution demands that the remedy be tailored to the violation. See

13   *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 22, 31

14   (1990) (if a state collects a tax that discriminates against interstate commerce, the

15   Due Process Clause mandates that the state provide backward-looking relief that

16   fully removes the discriminatory effects of the unconstitutional tax); *Marbury v.*

17   *Madison*, 5 U.S. 137, 163 (1803) (there must be a proper remedy for the violation

18   of a vested legal right). The application of these principles to this case warrants

19   appellate review at this time.

20        Defendants have further argued that the only proper remedy for the

21   constitutional violation found by this Court, based on the plaintiff's flawed

22   structure, is the dismissal of this lawsuit. Without a properly-constituted body, they

23   argue, plaintiff has no legal capacity or standing to bring this action in the first

24   place. They also argue that this result is mandated by the rule that "[i]f the

25   constitutional structure of our Government that protects individual liberty is

26   compromised, individuals who suffer otherwise justiciable injury may object."

27   *Bond v. United States*, 131 S. Ct. 2355, 2365 (2011); see also *Clinton v. City of*

28   *New York*, 524 U.S. 417, 450 (1998) ("Liberty is always at stake when one or more

of the branches seek to transgress the separation of powers") (Kennedy, J., concurring).

In light of these authorities, at a minimum, the constitutional error found by this Court presents a controlling legal question that justifies interlocutory review.

**2.    A substantial basis exists for difference of opinion regarding the proper remedy for the constitutional defect found by the Court.**

With respect to the second criterion for certification, substantial grounds for difference of opinion exist where reasonable jurists might disagree on the resolution of an issue. This factor can be satisfied by demonstrating that either (a) the appeal presents a novel issue on which fair-minded jurists might differ or (b) courts that have considered the issue are divided. See *Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 688 (9th Cir. 2011). Both of these alternatives are satisfied here.

While the *PHH* court did not "consider the legal ramifications of [its] decision for past CFPB rules or for past agency enforcement actions" (*PHH,* 839 F.3d 39, fn. 19), the impact of the Bureau's unconstitutional structure is an issue on which fair-minded jurists can disagree. For example, the Bureau's attempt to relegate the constitutional defect at issue here to a harmless error category is based on the premise of administrative efficiency. While adoption of Defendants' view may cause administrative inefficiency in light of the pending lawsuits filed by the Bureau, Defendants have argued that administrative efficiency is never a reason to withhold the proper remedy when a constitutional violation is established. In their view, "[t]he Constitution's structure requires a stability which transcends the convenience of the moment." *Clinton,* 524 U.S. at 449 (Kennedy, J., concurring). Defendants further argue that "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will

7

not save it if it is contrary to the Constitution." *INS v. Chadha*, 462 U.S. 919, 944 (1983). Rather, in Defendants' view, "the Constitution protects us from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." *New York v. United States*, 505 U.S. 144, 187 (1992). Therefore, while the Court adopted Defendants' position that the Bureau is structurally defective, the Court's failure to allow a proper remedy for this violation presents a novel issue on which fair-minded jurists can disagree. This is further evidenced by the contrary view endorsed in other cases. See *NRA Political Victory Fund*, 6 F.3d at 822 ("appellants raise the constitutional challenge as a defense to an enforcement action, and we are aware of no theory that would permit us to declare the Commission's structure unconstitutional without providing relief to the appellants in this case"); see also *CFPB v. Gordon*, 819 F.3d 1179, 1198-1204 (9th Cir. 2016) (Ikuta, J., dissenting) (adopting the appellant's view and rejecting the majority's view regarding the legal effect of the unconstitutional recess appointment of the CFPB's director).

In sum, the second criterion under section 1292(b) is satisfied here.

### 3. Resolution of the proper remedy for the Bureau's unconstitutional structure would materially advance the litigation.

As discussed above, before certifying an appeal under section 1292(b), the Court must determine whether the interlocutory appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). However, there is no requirement "that the interlocutory appeal have a final, dispositive effect on the litigation[.]" *Reese,* 643 F.3d at 688. This is consistent with the permissive language used by the statute -- that "an immediate appeal from the order *may* materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

**[PROPOSED] ORDER ON DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY**
2656953v.1

If "interlocutory reversal *might* save time for the district court, and time and expense for the litigants," appellate review should be entertained. *Johnson,* 930 F.2d at 1206 (emphasis added) (addressing the related issue as to what constitutes a controlling question of law); *id.* at 1205 (noting that threshold questions, by their nature, "may materially advance the ultimate termination of the litigation"); see also *Kuehner v. Dickinson & Co*., 84 F.3d 316, 319 (9th Cir. 1996) (order requiring parties to arbitrate involved "controlling question of law" even though, by its nature, the order could not have disposed of the case).

Applying these principles, district court decisions on motions to dismiss can be ideal candidates for appeal pursuant to section 1292(b). See *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) (denial of dismissal motion based on personal jurisdiction and forum non conveniens issues). Finally, because no trial date has been set, this further justifies the need for certification. See *Shurance v. Planning Control Int'l, Inc.,* 839 F.2d 1347, 1348 (9th Cir. 1988) (relief denied under section 1292(b) where trial was scheduled to begin months later).

**B.    In addition, the Court certifies the constitutional questions presented under the void-for-vagueness doctrine.**

**1.    Identifying and applying the proper test to evaluate Defendants' vagueness argument presents another controlling legal question.**

The Bureau successfully argued in this case that *Hoffman Estates,* 455 U.S. 489 imposes a low-threshold test in evaluating Defendants' due process argument based on the vagueness doctrine. (D.E. 48, p. 5.) The Court adopted the Bureau's view (D.E. 57, p.10), rejecting Defendants' constitutional argument.

This legal analysis satisfies the first requirement for interlocutory appeal because the legal issue presented here – the proper test for evaluating the void-for-

vagueness challenge – is a controlling legal question. While the Bureau relied on *Hoffman Estates,* Defendants have argued in their certification motion that the validity of that decision and its application here are highly suspect. That case held that, in evaluating vagueness challenges, "assuming the enactment implicates no constitutionally protected conduct," the court should uphold the challenge "only if the enactment is impermissibly vague in all of its applications." *Hoffman Estates,* at 494-495 & fn. 7. Here, however, Defendants argue that while false advertising is admittedly not a constitutionally protected category of speech, the remaining allegations presented here are not immune from such constitutional scrutiny.[3] In sum, the initial inquiry in identifying the proper test for evaluating Defendants' void-for-vagueness argument presents a controlling legal question, thus satisfying the first requirement under section 1292.

### 2.   A substantial basis exists for difference of opinion regarding the constitutional due process issue presented here.

In attacking Defendants' as-applied challenge, the Bureau successfully argued that "the CFPA is explicit in its prohibition of unfair and abusive acts and practices, and the statute itself sets forth the elements of both claims. Defendants have therefore had notice of the elements of prohibited conduct since … the date the CFPA became law." (D.E. 48, p. 4.) Judging by this argument (which was adopted by the Court), the Bureau believes that facial validity of a statute necessarily precludes a party from presenting an as-applied challenge.

---

[3] Defendants also contend that the test adopted in *Hoffman Estates* is obsolete in light of the recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). As Justice Scalia explained in the majority opinion, the Court's decisions "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 2561; see also *id.* at 2580 (confirming that the majority has jettisoned the test adopted in *Village of Hoffman Estate*) (Alito, J., dissenting).

While some courts have adopted the Bureau's approach, Defendants have argued that this approach is analytically flawed. In *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984), for example, the Colorado Supreme Court examined the language of the state's punitive damages statute in evaluating whether the application of that statute – whose facial validity was also challenged – violated the defendant's due process rights. *Id*. at 214-215. While that court adopted the Bureau's analytical approach in evaluating as-applied challenges (by examining the statutory language), Defendants argue that this approach ignores the basic rule that a statute may be unconstitutional as applied, even if it is facially valid. (D.E. 57, pp. 10-11.) Based on these arguments, the Court finds that a substantial basis exists for difference of opinion regarding Defendants' void-for-vagueness doctrine.

This finding is further bolstered by Defendants' argument that even if we assume the Bureau's interpretation of the statutory law is correct, the CFPA statute is nonetheless invalid because it encourages discriminatory enforcement. Under this "more important aspect of the vagueness doctrine" (*Kolender v. Lawson,* 461 U.S. 352, 357-358 (1983)), a law is impermissible if it allows or encourages law enforcement to administer the law – e.g., based on their own eye-of-the-beholder test in interpreting or applying the law – as they see fit. According to Defendants, neither the prior FTCA cases nor the CFPB's guidelines (D.E. 57, pp. 11-12) eliminate the practical, legal implication of the new interpretation of the law advanced by the CFPB. To the contrary, the Bureau's unilateral power to obtain significant funding without traditional congressional oversight (12 U.S.C. § 5497(a)(2)(C)) exacerbates the risk of arbitrary enforcement in the absence of financial accountability, they claim. Defendants also argue that, far from resolving those concerns, the self-generated guidelines of the CFBP create other constitutional cans of worms because it is "contrary to fundamental principles of separation of powers to permit the person who promulgates a law to interpret it as well." *Talk Am., Inc. v. Mich. Bell Tele. Co.*, 564 U.S. 50, 68 (2011) (Scalia, J.,

concurring); accord, *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1217-1220 (2014) (Thomas, J., concurring in the judgment) (explaining the separation-of-powers concerns with adopting an agency's interpretation of the law).

Invoking these cases, Defendants contend that even if we assume that the CFPA statute is not ambiguous, they cannot be held liable in this case due to the Bureau's novel *interpretation* of that non-ambiguous law, citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964) and *Rabe v. Washington*, 405 U.S. 313, 315-316 (1972) (conviction reversed on vagueness ground where state Supreme Court's interpretation failed to give defendant "fair notice that criminal liability is dependent upon" the location where the allegedly obscene film was displayed by defendant). Based on these arguments, the Court finds that a substantial basis exists for difference of opinion regarding Defendants' void-for-vagueness doctrine.

### 3. Resolution of the void-for-vagueness issue would materially advance the litigation.

If the Court of Appeals adopts Defendants' void-for-vagueness argument, the net effect of that holding would be the entry of judgment in Defendants' favor. The resolution of this dispositive issue would necessarily advance the litigation by terminating this lawsuit, thus satisfying the last requirement for interlocutory review.

### C. In addition to certifying its decision for interlocutory appellate review, this Court stays further proceedings in this court pending the completion of appellate proceedings.

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." See *Leyva v. Certified Grocers of Cal., Ltd*., 593 F.2d 857, 863 (9th Cir. 1979). "Where it is

proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (internal quotation marks and citations omitted).

Under this balancing test, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (addressing preliminary injunction standard). It is "clear," however, that "to justify a stay, petitioners need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) (stay of removal). Applying these principles here, this Court issues a stay based on the following analysis in order to "promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp.,* 467 F.2d at 244.

**1.    The balance of hardships tips decidedly in favor of a stay pending the resolution of appellate proceedings. Otherwise, Defendants will suffer irreparable injury.**

Absent a stay, the parties will be forced to continue forward with merits-based discovery, not to mention motion practice and extensive trial preparations. The burdens attendant with that discovery, motion and trial preparation will be particularly acute, given the large universe of documents previously sought by the Bureau during the administrative phase of this case. In addition, Defendants will need to seek comparably extensive discovery in connection with the issues of liability and damages.

"The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling." Wright & Miller, supra, § 3930. Here, that balance weighs decisively toward certification and stay. Prompt reversal of the order would render unnecessary virtually all of this litigation, substantially lessening the burdens on both the parties and the Court. Given the relatively early stage of this complicated, fact-intensive case involving numerous witnesses and a large universe of documents, an interlocutory appeal would not prejudice the Bureau.

### 2.   Serious questions are presented by Defendants' request for interlocutory appeal.

Defendants have a sufficient likelihood of success on the merits to support the issuance of a stay because their threshold arguments raise serious legal questions in terms of the application of the pertinent provisions of the federal Constitution. As acknowledged by this Court, "the CFPB has provided much fodder for constitutional objection in the years since its creation," further underscoring the appropriateness of a stay in this case.  (D.E. 57, p. 6.)

The constitutional issues, of course, are not only of substantial importance to the parties here, but to the entire financial services industry throughout the fifty states who are struggling with the Bureau's interpretation of the law. Given the serious and important questions raised by the Court's order, a stay is warranted.

### 3.   The public interest weighs in favor of a stay.

Finally, a stay would serve important interests of sound and fair judicial administration. The public interest lies in proper resolution of the important issues raised in this case, and issuance of stay would avoid wasting resources on a lawsuit which might be dismissed on appeal.

2656953v.1

1    Otherwise, based on Defendants' credible statement of inability to obtain a
2  likely multi-million dollar appeal bond, requiring Defendants to challenge an
3  adverse judgment after a full-blown trial would undermine Defendants' right to a
4  meaningful appeal. Forcing a party to incur the expense of litigation before its
5  interlocutory appeal is heard may, in practice, render the appeal illusory or moot
6  (e.g., if Defendants are forced into bankruptcy). As a result, the balance tips
7  sharply in favor of a stay.

8

9  **IV.    CONCLUSION**

10

11    Defendants have sought certification by this Court in order to explore
12  appellate review of the recent adverse ruling on their motion to dismiss.
13  Accordingly, the motion is granted. In lieu of amending its November 17, 2016
14  order by certifying that order for interlocutory appellate review (Fed. R. App. Proc.
15  5(a)(3)), the Court enters this proposed order. The Court also stays further
16  proceedings in this Court pending completion of appellate proceedings.

17

18

19  DATED: March___, 2017

20

21                                          By: _/s/_____
22                                               Hon. Philip S. Gutierrez
                                                 United States District Court Judge
23

24

25

26

27

28

**[PROPOSED] ORDER ON DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL &
CONCOMITANT STAY**

2656953v.1