1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

11
12

Consumer Financial Protection
Bureau,

13

Plaintiff,

14

15

v.

16
17

D and D Marketing, Inc., d/b/a
T3Leads, *et al.*,

18

Defendants.

Case No. 2:15-cv-9692-PSG(Ex)

Honorable Philip S. Gutierrez

ORDER DENYING DEFENDANTS'
MOTIONS FOR CERTIFICATION OF
INTERLOCUTORY APPEAL AND STAY

Hearing Date & Time: March 27, 2017; 1:30 p.m.

Courtroom 6A, 350 West 1st Street, 6th Floor,
Los Angeles, California 90012

19

**INTRODUCTION**

20    The Consumer Financial Protection Bureau ("Bureau") initiated three related

21  actions under the Consumer Financial Protection Act of 2010 ("CFPA")[1]: *CFPB v. D*

22  *and D Marketing, Inc., d/b/a T3Leads, et al.*; *CFPB v. Dmitry Fomichev*; and *CFPB*

23  *v. Davit Gasparyan*.[2] Each defendant in the related cases moved to dismiss under

24

25  [1] 12 U.S.C. §§ 5536(a)(3), 5564, 5565.

26  [2] *CFPB v. D and D Marketing, Inc., d/b/a T3Leads, et al.* [hereinafter *T3*], 2:15-cv-
27  9692-PSG(Ex); *CFPB v. Dmitry Fomichev* [hereinafter *Fomichev*], 2:16-cv-2724-
    PSG(Ex); *CFPB v. Davit Gasparyan* [hereinafter *Gasparyan*], 2:16-cv-2724-
28  PSG(Ex).

1  Federal Rule of Civil Procedure 12(b)(6). The Court denied those motions in a
2  consolidated Order on November 17, 2016.

3       This matter is now before the Court on the defendants' respective motions for
4  certification of interlocutory appeal and concomitant stay by which the defendants
5  seek an interlocutory appeal of the Order denying their motions to dismiss. For the
6  reasons stated below, the Court denies the defendants' motions.

7  **DISCUSSION**

8  **I.    Interlocutory appeal under § 1292(b) is not warranted here.**

9       The Court may certify an immediate appeal from a district court order not
10 otherwise subject to interlocutory appeal if the order involves a controlling question
11 of law as to which there is a substantial ground for difference of opinion and an
12 immediate appeal will materially advance the ultimate termination of the litigation.[3]
13 But even if these requirements are met, a district court retains independent discretion
14 on a motion for certification of interlocutory appeal.[4]

15      Certification for interlocutory appeal should be applied sparingly and only
16 granted in exceptional situations in which allowing an interlocutory appeal would
17 avoid protracted and expensive litigation. The burden to establish such exceptional
18 circumstances is on the party seeking certification.[5] Here, the defendants fail to meet
19 their burden.

20
21
22
23
24
_____

25 [3] 28 U.S.C. § 1292(b).

26 [4] *See*, *e.g.*, *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d
27 139, 146 (E.D.N.Y. 1999).

28 [5] *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

2

## A. "The proper remedy" for any structural infirmity of the Bureau is not a controlling question of law as to which there is a substantial ground for difference of opinion.

The defendants seek certification of this Court's decision that severance of the for-cause removal provision applicable to the Bureau's Director, rather than dismissal of these actions, was the proper remedy for a finding that the structure of the Bureau violates Article II of the Constitution. The proper remedy for the Bureau's unconstitutional structure, however, is not a question as to which there is a substantial ground for difference of opinion requiring the immediate attention of an appellate court.

When addressing defendants' arguments to dismiss the complaints based on the purported unconstitutionality of the Bureau, this Court surveyed relevant caselaw and noted that some district courts have upheld the Bureau's constitutionality,[6] a panel of the D.C. Circuit in *PHH Corp. v. CFPB* had found the Bureau's structure unconstitutional,[7] and the Ninth Circuit had not yet addressed the issue. Since then, the D.C. Circuit has granted rehearing en banc in *PHH* and vacated the panel's judgment.[8] The defendants' question assumes that the Ninth Circuit would find that the Bureau is unconstitutionally structured. That is an unwarranted assumption, even in light of this Court's ruling.

---

[6] *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014); *CFPB v. ITT Educ. Servs.*, CV 14-292 SEB (TABx), 2015 WL 1013508, at *9 (S.D. Ind. Mar. 6, 2015). *See also CFPB v. NDG Fin.Corp.*, No. 15-cv-5211 CM, 2016 U.S. Dist. LEXIS 177756, at *66 (S.D.N.Y. Dec. 2, 2016) (declining to address a challenge to the constitutionality of the Bureau's structure); *CFPB v. CashCall, Inc.*, CV 15-7522-JFW (RAOx), 2016 WL 4820635, at *13 (C.D. Cal. Aug. 31, 2016) (rejecting challenge to the constitutionality of the Bureau's structure).

[7] *PHH Corp. v. CFPB*, 839 F.3d 1, at *8 (D.C. Cir. 2016).

[8] *PHH Corp. v. CFPB*, D.C. Cir. Case No. 15-1177, Doc. No. 1661681 (Feb. 16, 2017).

1    Beyond the underlying constitutionality question, there is no substantial

2    ground for difference of opinion on the defendants' posited remedy-question. "To

3    determine [whether] a 'substantial ground for difference of opinion' exists under

4    § 1292(b), courts must examine to what extent the controlling law is unclear"[9] and

5    must find that "reasonable jurists might disagree on an issue's resolution."[10] Courts

6    have uniformly allowed the Bureau to continue to pursue its enforcement actions

7    despite any possible constitutional infirmity. There is no reason to believe the Ninth

8    Circuit would hold otherwise.

9    The defendants' reliance on constitutional standing as a "threshold issue" is

10   misplaced. There is no constitutional-standing issue in this case because binding

11   Ninth Circuit precedent makes clear that any Article II infirmity does not impact the

12   Bureau's Article III standing.[11]

13   **B.     Defendants waived the issue of "proper remedy" on interlocutory**

14   **appeal by failing to raise it in their Motion to Dismiss.**

15   "[A]n issue will generally be deemed waived on appeal if the argument was

16   not raised sufficiently for the trial court to rule on it."[12] The defendants did not raise

17   the proper-remedy issue at all. The defendants' omission of the remedy issue in their

18   motions to dismiss is fatal.

19

20

21   _____

22   [9] *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

23   [10] *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

24   [11] *CFPB v. Gordon*, 819 F.3d 1179, 1190 (9th Cir. 2016) (no court, including the
     Supreme Court, has ever suggested that Article II problems nullify Article III
25   jurisdiction" and holding that an Article II problem with the appointment of the
     Bureau's Director did not deprive the Bureau of Article III standing).
26

27   [12] *Armstrong v. Brown*, 768 F.3d 975, 981-82 (9th Cir. 2014) (*citing Ruiz v. Affinity
     Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012)) (internal quotation marks
28   omitted).

**C. Defendants' second posited question regarding an "as-applied" void-for-vagueness challenge is not a controlling question of law as to which there is a substantial ground for difference of opinion.**

Defendants' second question is as follows:

> Whether a party is barred from advancing an as-applied challenge to the constitutionality of a statute, based on the premise that the statute is not facially vague, where a novel interpretation of the statute may encourage its discriminatory enforcement? A subsidiary, threshold question is the proper test for evaluating such challenges.

This question is wholly unrelated to the Court's denial of the motions to dismiss and thus is not a controlling issue of law.[13] No party argued, nor did the Court find, that a party is "barred from advancing an as-applied challenge." The Court simply rejected the as-applied challenge the defendants advanced on their motions to dismiss.[14]

The Court did not consider whether the CFPA was *facially* vague because no such challenge was made.[15] The only issue raised was whether the CFPA is unconstitutionally vague *as applied* to the defendants. The Court's decision does not engage in a facial analysis by considering how the CFPA applies globally.

Not only is the defendants' claim that the Court considered only the facial validity of the CFPA plainly inconsistent with the Court's Order, but the defendants offer no meaningful support for this interpretation. Although the defendants argue

---

[13] *See In re Cement Antitrust Litig.*, 673 F.2d at 1026.

[14] Gasparyan did not make either a facial or as-applied challenge to the CFPA in his Motion to Dismiss, and therefore waived any such argument on appeal. Fomichev arguably made an as-applied challenge to the CFPA by arguing that he lacked "fair notice." *See Fomichev*, Mot. to Dismiss, ECF No. 29, at 13.

[15] *See generally Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 996 (E.D. Cal. 2006) (internal quotation marks and citation omitted) ("An as applied challenge is a claim that the operation of a statute is unconstitutional in a particular case, while a facial challenge alleges the statute may rarely or never be constitutionally applied.").

1   that the Court's "adopt[ion] [of] the Bureau's analytical approach" by "examining

2   the statutory language" of the CFPA indicates a facial analysis,[16] courts routinely

3   examine statutory language when evaluating as-applied constitutional vagueness

4   challenges.[17] Indeed, it would be the rare case where a court could determine

5   whether a statute provides constitutionally sufficient notice without examining the

6   statute's text. Because the Court considered the defendants' as-applied challenge to

7   the CFPA, a resolution of whether "facial validity of a statute necessarily precludes a

8   party from presenting an as-applied challenge" has no bearing here.

9          The defendants also fail to show any ground for a difference of opinion on the

10  subsidiary question relating to the standard the Court applied in evaluating the

11  defendants' as-applied vagueness challenge. The Court considered whether the

12  CFPA "g[a]ve fair notice of the conduct that is forbidden or required" and applied "a

13  less strict vagueness test" appropriate for "economic regulation."[18] It is well-

14  established that this is the appropriate standard for evaluating an as-applied

15  vagueness challenge to a statute that regulates business entities.[19]

16

17

18  _____

19  [16] *T3,* ECF No. 69, at 13; *Fomichev*, ECF No. 47, at 11-12.

20  [17] *See, e.g.*, *SEC v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031, 1044-48 (9th Cir.
    2005) (engaging in textual analysis of civil securities statute where defendants
21  brought an as-applied vagueness challenge alleging lack of notice); *Craft v. Nat'l
    Park Serv.*, 34 F.3d 918, 921-23 (9th Cir. 1994) (engaging in textual analysis of
22  federal regulation where defendants brought an as-applied vagueness challenge
23  alleging lack of notice).

24  [18] Order Denying Defs.' Mots. to Dismiss, at 10 (*citing FCC v. Fox Television
    Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) and *Vill. of Hoffman Estates v. Flipside,*
25  *Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)).

26  [19] *See, e.g., Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729
27  F.3d 937, 946 (9th Cir. 2013) ("Economic regulation is subject to a less strict
    vagueness test ...."); *Gemstar-TV Guide Int'l*, 401 F.3d at 1047-48 (applying "less
28  strict vagueness test" to securities statute).

ORDER DENYING DEFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY

1    To the extent the defendants suggest that there is a difference of opinion as to

2  the appropriate test, it is without support.[20] The defendants now criticize any reliance

3  on *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,[21] and claim that the

4  case is purportedly "obsolete in light of the recent decision in *Johnson v. United*

5  *States*, 135 S. Ct. 2551 (2015)."[22] Although the Supreme Court in *Johnson*

6  "suggested some skepticism" about the "longstanding framework" on the standard

7  applicable for *facial* challenges to a statute, that standard is not relevant here.[23] The

8  Court treated the defendants' claim as an as-applied challenge—not a facial

9  challenge—and cited *Hoffman Estates* solely for the rule that economic regulation is

10  subject to a less strict vagueness test.[24] Notably, T3 and the Demirchyans cited

11  *Hoffman Estates* for the same purpose.[25] *Johnson* contains no discussion of the

12  vagueness test applicable to economic regulation; nor do the defendants offer any

13  support to question this long-standing test, particularly where they formerly adopted

14  it.

15    The defendants briefly raise two additional, subsidiary arguments: that the

16  Court failed to address whether the CFPA encourages discriminatory enforcement

17  and that the Bureau's interpretation of the CFPA is novel and thus invalid.

18

19

20

21  [20] *See T3*, ECF No. 69, at 11-12; *Fomichev*, ECF No. 47, at 10-11.

22  [21] 455 U.S. 489 (1982).

23  [22] *T3,* ECF No. 69, at 12 n.4; *Fomichev*, ECF No. 47, at 11 n.1.

24  [23] *United States Telecom Ass'n v. FCC*, 825 F.3d 674, 735-36 (D.C. Cir. 2016)
25  (discussing the effect of the Supreme Court's decision in *Johnson* on *Hoffman
   Estates*); *see also Johnson*, 135 S. Ct. at 2560-63 (addressing whether to succeed on
26  a facial challenge a party must show that statute was vague in all of its applications).

27  [24] Order Denying Defs.' Mots. to Dismiss, at 10; ECF No. 48, at 5 n.15

28  [25] *T3*, ECF No. 39, at 9.

ORDER DENYING DEFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY

1    The defendants' argument that the Court failed to address whether the CFPA

2   encourages discriminatory enforcement is also without merit.[26] As an initial matter,

3   the defendants did not raise this argument in their motions to dismiss.[27] Additionally,

4   the defendants do not articulate how the CFPA "authorizes or even encourages

5   arbitrary and discriminatory enforcement."[28] The defendants propose no

6   interpretation of the statute suggesting discriminatory enforcement, nor do they

7   identify any allegations (properly before the Court or otherwise) in support.

8   Accordingly, the defendants fail to show that this issue is relevant, much less a

9   controlling issue. Even if the issue were a controlling issue of law, the defendants

10  identify no substantial ground for a difference of opinion on the well-established

11  standard for establishing discriminatory enforcement.[29]

12    The defendants also seek to re-litigate on appeal the rejected argument that the

13  Bureau's interpretation of the CFPA is novel and thus invalid.[30] The defendants fail

14  to identify any substantial ground for a difference of opinion on this issue. In

15  rejecting the defendants' original arguments, the Court opined that "courts have

16

17  [26] *T3*, ECF No. 69, at 13-14. *Fomichev*, ECF No. 47, at 12-13.

18  [27] *See, e.g.*, *M.G. v. Metro. Interpreters and Translators, Inc.*, 85 F. Supp. 3d 1195,
    1200 (S.D. Cal. 2015) ("In the absence of extraordinary circumstances …, it is
19  generally inappropriate to review legal issues entwined with factual considerations
    raised for the first time on a motion for interlocutory appeal.") (citing *In re Mortg.*
20  *Store, Inc.*, 773 F.3d 990, 998 (9th Cir. 2014)).

21  [28] *Hill v. Colorado*, 530 U.S. 703, 732-33 (2000).

22  [29] *See, e.g., Fox Television Stations, Inc.*, 132 S. Ct. at 2317 (explaining that the
    "void for vagueness doctrine addresses" the due process concern that "precision and
23  guidance are necessary [in a statute] so that those enforcing the law do not act in an
    arbitrary or discriminatory way"); *Grayned v. City of Rockford*, 408 U.S. 104, 108-
24  09 (1972) ("A vague law impermissibly delegates basic policy matters to policemen,
25  judges, and juries for resolution on an ad hoc and subjective basis, with the attendant
26  dangers of arbitrary and discriminatory application.").

27  [30] *See* Order Denying Defs.' Mots. to Dismiss, at 12 (acknowledging Defendants'
    arguments that the "CFPB now advances a new interpretation of the law" and
28  declining "Defendants' invitation to find that . . . interpretation . . . invalid").

recognized that due process concerns do not preclude an agency from prosecuting borderline cases" and Defendants "could reasonably foresee that a court could construe its conduct as falling within the statute."[31] The defendants fail to show how the Court's opinion involves "novel legal issues . . . on which fair-minded jurists might reach contradictory conclusions."[32] Although the defendants cite three additional cases in an attempt to bolster this argument, none suggests the existence of a difference of opinion.[33] Rather, the cited cases stand for the proposition that retroactive application of a new construction of a statute violates due process, which is entirely consistent with this Court's ruling and is not at issue in defendants' cases.

> **D.**     **Gasparyan's posited question as to whether the Bureau must declare a practice "unfair" or "abusive" before filing suit is not a controlling question of law as to which there is a substantial ground for difference of opinion.**

Gasparyan repeats his earlier fair-notice argument by again claiming that the Bureau must "announce and explain" what practices might lead to liability under the CFPA before bringing an enforcement action.[34] This argument is plainly contrary to the language of the CFPA and well-established precedent. This Court determined as a matter of law that "adequate notice of a duty to monitor third-party lead purchasers and generators" was provided presuit in the form of the governing statute and

---

[31] *Id.* (citations and internal quotation marks omitted).

[32] *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (describing standard).

[33] *T3*, ECF No. 69, at 14-15 (citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, n.22 (1996); *Rabe v. Washington*, 405 U.S. 313, 315-16 (1972)). *Fomichev*, ECF No. 47, at 13 (citing *Bouie v. City of Columbia* and *BMW of N. Am., Inc. v. Gore*).

[34] *Gasparyan*, ECF No. 61, at 8.

ORDER DENYING DEFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY

1  additional Bureau-issued guidance.[35] Gasparyan cannot meet his burden to show that

2  his posited question warrants interlocutory review.

3       Gasparyan argues implausibly that his interpretation—that the CFPA requires

4  that the Bureau "declare" practices unfair or abusive through a process other than

5  enforcement—"is consistent with well-settled principles of administrative law as

6  they have been applied in the context of court decisions involving the similarly-

7  worded [FTC Act]."[36] But the basis of his argument, that the FTC and, by analogy,

8  the Bureau must declare a practice "unfair" before bringing an enforcement action is

9  simply wrong.[37] Courts have routinely rejected this exact claim when raised by

10 defendants in FTC enforcement proceedings: "Circuit Courts of Appeal have

11 affirmed FTC unfairness actions in a variety of contexts *without* preexisting rules or

12 regulations specifically addressing the conduct-at-issue."[38] This Court similarly

13 rejects Gasparyan's argument.

14      Gasparyan's interpretation of the FTC Act is based solely on his misreading of

15 *FTC v. Sperry & Hutchinson Company*.[39] There, the Supreme Court found that both

16 the FTC and the Circuit Court applied the incorrect standard in an administrative

17 enforcement proceeding.[40] In deciding who should reconsider the case in light the

18 Supreme Court's holding—the FTC or the Circuit Court— the Court determined that

19 _____

20 [35] Order Denying Defs.' Mots. to Dismiss, at 10-12.

21 [36] *Gasparyan*, ECF No. 61 at 10-12.

22 [37] *Id.*

23

24 [38] *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 618 (D.N.J. 2014)
   (emphasis in original) (citing as examples *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1153,

25 1155-59 (9th Cir. 2010) and *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1191, 1993-95
   (10th Cir. 2009)).

26

27 [39] 405 U.S. 233 (1972); *see* ECF No. 61, at 10-12.

28 [40] 405 U.S. at 239.

1    the case should be remanded to the FTC in the first instance due to "proper concerns

2    about the interaction of administrative agencies and the courts[.]"[41] Contrary to

3    Gasparyan's claim, however, that case does not even touch upon the broad question

4    of whether the FTC or the courts should be the "arbitrator of what practices are

5    'unfair.'"[42] The Supreme Court merely recognized the limitation on judicial review

6    where the FTC had proceeded administratively.[43] Indeed, *Sperry & Hutchinson*

7    affirms the FTC's authority to enforce the unfairness prohibition through

8    adjudication.[44]

9          Although the Bureau is a relatively new agency, both "unfair" and "abusive"

10   are terms with established meanings under pre-existing consumer-protection statutes,

11   and the CFPA's prohibition of unfair practices is nearly identical to that in the FTC

12   Act.[45] There is no question that the choice to enforce the CFPA's unfair and abusive

13   provisions through enforcement actions without prior rulemaking is one within the

14

15

---

16   [41] 405 U.S. at 245-250.

17

18   [42] ECF No. 61, at 11.

19   [43] 405 U.S. at 249.

20   [44] *See generally* 405 U.S. 233 (FTC filed administrative enforcement proceeding

21   based on unfair practices).

22   [45] Order Denying Defs. Mots. to Dismiss, at 10-11 (citing *CFPB v. Gordon*, 819 F.3d

23   1179, 1193 n.7 (9th Cir. 2016)) ("Courts have recognized that the term 'unfair' in

     Section X of the Dodd Frank Act taps into a 'well-developed and long-established'

24   definition of the same term in section 5 of the [FTC Act]. . . . Because of the

     tradition of these terms and Congress's reliance on the [FTC Act] in crafting the

25   CFPA, the Court cannot conclude that the use of the term 'unfair' in Section X of the

     Dodd-Frank Act renders the CFPA unconstitutionally vague. . . . The Court makes

26   the same determination as to the term 'abusive.'"). *See also CFPB v. CashCall, Inc.*,

27   CV 15-7522-JFW (RAOx), 2016 WL 4820635, at *16 (C.D. Cal. Aug. 31, 2016);

     *CFPB v. ITT Educ. Servs.*, CV 14-292 SEB (TABx), 2015 WL 1013508, at *17-18

28   (S.D. Ind. Mar. 6, 2015).

---

1  discretion of the Bureau to make;[46] this is not an issue worthy of certification for

2  interlocutory appeal.

3       **E.    An interlocutory appeal would not materially advance the ultimate**

4            **termination of this litigation.**

5       Interlocutory appeal in these cases would likely serve simply to delay

6  adjudication, even if the other prerequisites for certification were met. For the

7  ultimate termination to be advanced, the Ninth Circuit would have to accept the

8  appeal and rule entirely in the defendants' favor. Each of these occurrences is highly

9  speculative if not unlikely.[47]

10 **II.   Defendants fail to establish the existence of exceptional circumstances**

11      **warranting the exercise of discretion in their favor.**

12      Because § 1292(b) "is a departure from the normal rule that only final

13 judgments are appealable," it "must be construed narrowly" and invoked only in

14 "rare circumstances."[48] Even where the minimum statutory requirements are met, the

15 Court retains "independent and 'unreviewable'" discretion on a motion for

16

17

18 _____

19 [46] *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 293 (1974); *SEC
   v. Chenery Corp.*, 332 U.S. 194, 203 (1947)).

20 [47] This Court notes that the Ninth Circuit will have the opportunity to decide whether
21 to review the underlying question of the Bureau's structure in a case already certified
   for interlocutory appeal. *See CFPB v. CashCall, Inc.*, 15-cv-7522-JFW (RAOx),
22 (C.D. Cal. Jan. 3, 2017). That post-summary-judgment case was certified for appeal
23 on January 3, 2017, ECF No. 235, and is therefore well ahead of this case in the
   appellate process. If the Ninth Circuit accepts that case, it would likely consider the
24 structural issue. The resulting decision would, in turn, determine whether
   consideration of the subsidiary issue of the proper remedy for the alleged structural
25 defect would be worthy of appellate consideration at any time. Of course, if the
   Ninth Circuit declines the *CashCall* case, there is no reason to believe it would
26 accept the interlocutory appeals requested by the defendants here. There is no reason
27 to add the instant cases to the Ninth Circuit's docket.

28 [48] *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

ORDER DENYING DEFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY

1  certification of interlocutory appeal.[49] This case warrants adherence to the "normal

2  rule" and a denial of interlocutory appeal.

3      **A.    Interlocutory consideration of Defendants' "proper remedy"**

4         **question is unlikely to advance this case.**

5         As described above, the appellate court is unlikely to impose the remedy the

6  defendants seek. Adding to the inappropriateness of interlocutory review here, the

7  appellate court may never reach the defendants' remedy question; the Ninth Circuit

8  need not reach the defendants' question if it determines that the Bureau's structure is

9  constitutional in the first instance.[50] The Ninth Circuit's review on interlocutory

10 appeal would not be limited to the narrow question posited by the defendants.[51] Any

11 appellate review would likely include the underlying constitutionality issue, which

12 this Court recognized "has not yet [been] addressed" by the Ninth Circuit.[52] After all,

13 the appellate court would be unlikely to consider a remedy without consideration of

14 whether there is a violation to remedy.

15

16

17

---

18 [49] *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d at 146

19 (citing *Exec. Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d at 1550.

20 [50] The Ninth Circuit may well conclude that the Bureau's structure is constitutional.
   As this Court noted before the contrary *PHH* judgment was vacated (vacatur at *PHH*

21 *Corp. v. CFPB*, D.C. Circuit Case No. 15-1177, Doc. No. 1661681 (Feb. 16, 2017)),
   the matter is unsettled. *See* Order Denying Defs.' Mots. to Dismiss, at 7-8 (collecting

22 cases); *see also* Resp't CFPB's Pet. for Reh'g En Banc 6-11, *PHH Corp. v. CFPB*,

23 No. 15-1177 (D.C. Cir. Nov. 18, 2016), Doc. No. 1646917 (requesting
   reconsideration of determination "that for-cause removal is unconstitutional as

24 applied to the Bureau's director" because it conflicts with Supreme Court precedent).

25 [51] *See, e.g.*, *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) ("As the text
   of § 1292(b) indicates, appellate jurisdiction … is not tied to the particular question

26 formulated by the district court," and the "appellate court may address any issue

27 fairly included within the certified order….") (citations omitted).

28 [52] Order Denying Defs.' Mots. to Dismiss, at 7.

---

13

1  **B.      Defendants' delay in filing this motion warrants denial of**

2  **certification.**

3          The defendants' failure to seek timely review—a threshold issue—weighs

4  against the Court's exercise of discretion in their favor.[53] T3 and the Demirchyans

5  filed their joint motion almost six weeks after the Court's November 17, 2016 denial

6  of the motions to dismiss. Fomichev filed a nearly identical motion almost one

7  month later. Gasparyan waited yet another month to file his substantially similar

8  motion. None of the defendants provide any valid excuse for those delays, and the

9  unjustified delays alone warrant denial of certification.[54] Indeed, the defendants'

10 delays in filing their motions, coupled with their delays of discovery, indicate that

11 the defendants' true goal is to avoid adjudication rather than to achieve judicial

12 economy.[55]

13 **III.    Defendants fail to justify a stay of this case.**

14         Because the Court denies certification, it need not address a stay pending

15 interlocutory appeal. However, the Court would deny Defendants' request for a stay

16 for independent reasons.

17

18  _____

19 [53] *See Spears v. Wash. Mut. Bank FA*, No. C-08-00868 RMW, 2010 U.S. Dist.
20 LEXIS 1454, at *3-4 (N.D. Cal. Jan. 8, 2010) (considering "threshold issue" of
   timeliness of motion for certification under Section 1292(b)).

21 [54] *See, e.g., Gagan v. Sharar*, No. CIV 99-1427 PHX RCB, 2006 U.S. Dist. LEXIS
22 81176, at *3-8 (D. Ariz. Nov. 6, 2006) (denying certification for unreasonable delay,
   and collecting cases); *cf. Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202
23 F.3d 957, 958 (7th Cir. 2000) (refusing permission to appeal where party took "two
   months to appeal," and stating that "a district judge should not grant an inexcusably
24 dilatory request" under Section 1292(b)).

25 [55] *See McDonald v. Holder*, No. 09-CV-0573-CVE-TLW, 2010 U.S. Dist. LEXIS
26 134059, at *5-7 (N.D. Okla. Dec. 17, 2010) ("Delay in filing a motion to certify an
   order for interlocutory appeal suggests that a party may be seeking to avoid an
27 unfavorable ruling, rather than to expedite the litigation for the benefit of the Court
   and all parties. This consideration is relevant … and … weighs against granting [a]
28 request for leave to file an interlocutory appeal.").

1    The Court declines to exercise its inherent authority to stay proceedings

2    pending appeal. The harm to the fair adjudication of this case outweighs any burden

3    upon the defendants. Because discovery has not commenced, the potential harm from

4    delay is great. As time passes, chances increase that documents will be lost,

5    memories will fade, and witnesses will become unavailable.[56]

6    A stay here would be particularly detrimental and unfair because the

7    defendants have already, for months, delayed the commencement of discovery.[57]

8                              **CONCLUSION**

9    For the foregoing reasons, the Court DENIES the defendants' motions for

10   certification of interlocutory appeal and a concomitant stay.

11   It is SO ORDERED.

12

13   Dated:

14                                    _____

15                                    Philip S. Gutierrez
                                      United States District Judge

16

17

18

19

20

21   _____

22   [56] *See, e.g.*, *Pinnock v. Doe*, No. 2:14-cv-05551-ODW(ASx), 2014 U.S. Dist. LEXIS
23   132155, at *8 (C.D. Cal. Sept. 19, 2014) (even a short discovery delay will cause the
     loss of "valuable time [a party] could spend conducting discovery establishing [a]
24   right to relief," and even without certainty, "[t]he possibility of evidence getting lost
     always exists, and the passage of time certainly exacerbates the problem"); *Roule v.*
25   *Petraeus*, No. C 10-04632 LB, 2012 U.S. Dist. LEXIS 86444, at *13-14 (N.D. Cal.
     June 21, 2012) (further delays caused by one party would likely harm the other, as
26   "memories fade and witnesses become unavailable over time").

27   [57] Rule 26(f) was adopted, in part, "[t]o assure . . . that the commencement of
     discovery is not delayed unduly." Fed. R. Civ. P. 26(f), 1993 advisory committee
28   note.

ORDER DENYING DEFS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY