PATRICK M. KELLY (SBN 45426)
patrick.kelly@wilsonelser.com
HERBERT P. KUNOWSKI (SBN 150141)
herbert.kunowski@wilsonelser.com
ROBERT COOPER (SBN 209641)
robert.cooper@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071
Telephone:   213.443.5100
Facsimile:   213.443.5101

ASHLEY VINSON CRAWFORD (SBN 257246)
avcrawford@akingump.com
DANIELLE C. GINTY (SBN 261809)
dginty@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, CA 94014
Telephone:   415.765.9500
Facsimile:   415.765.9501

**Attorneys for Defendants,**
**D and D Marketing, Inc., d/b/a T3Leads,**
**Grigor Demirchyan, and Marina**
**Demirchyan**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>D and D Marketing, Inc., d/b/a T3Leads, Grigor Demirchyan, and Marina Demirchyan,<br><br>Defendants. | Case No.   2:15-cv-09692-PSG(Ex)<br>Hon. Philip S. Gutierrez<br><br>**(1) REPLY MEMORANDUM BY DEFENDANTS D & D MARKETING INC., GRIGOR DEMIRCHYAN & MARINA DEMIRCHYAN IN SUPPORT OF THEIR MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND CONCOMITANT STAY; (2) DECLARATION OF HERBERT P. KUNOWSKI** (Filed Separately)<br><br>**Hearing Date:   March 27, 2017**<br>**Hearing Time:   1:30 p.m.**<br>**Courtroom:   6A**<br>**Courthouse:   First Street** |

# **TABLE OF CONTENTS**

Page

**INTRODUCTION** ...................................................................................................... 1

**DISCUSSION** ............................................................................................................. 1

    I.    Each of the Two Questions Presented Justify Interlocutory Appellate Review .......................................................................................... 1

        A.    The constitutional issues presented here, in terms of the constitutionality of the Bureau's structure and the proper remedy to resolve its structural flaw, present controlling questions of law involving substantial ground for difference of opinion ................................................................. 1

            1.    The constitutionality of the Bureau's structure requires immediate appellate review ............................... 1

            2.    The proper remedy required to address the Bureau's structural flaw presents a subsidiary issue that similarly justifies appellate review .......................... 4

        B.    The second issue presented, regarding the evaluation of D&D's statutory vagueness arguments, independently justifies interlocutory appellate review ...................................... 6

    II.    An Interlocutory Appeal Would Materially Advance the Ultimate Disposition of This Litigation ................................................. 9

    III.    A Stay Is Fully Justified in This Case, Particularly Given the Bureau's Position Regarding the Exceptional, National Importance of the Issues presented in This Case ............................. 10

**CONCLUSION** ....................................................................................................... 12

i

REPLY MEMORANDUM BY DEFENDANTS D & D, et al. ISO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY

2712163v.1

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Fin. Servs. Ass'n v. FTC*,
    767 F.2d 957 (D.C. Cir. 1985) .................................................................. 4

*CFPB v. CashCall, Inc.*
    15-cv-7522-JFW (RAOx) (C.D. Cal. Jan. 3, 2017) ................................. 11

*CFPB v. Gordon*,
    819 F.3d 1179 (9th Cir. 2016) .................................................................. 4

*Champlin Ref. Co. v. Corp. Comm'n*,
    286 U.S. 210 (1932) .................................................................................. 7

*Federal Election Comm'n v. NRA Political Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) ...................................................................... 3

*First English Evangelical Lutheran Church of
    Glendale v. County of Los Angeles*,
    482 U.S. 304 (1987) .................................................................................. 5

*FTC v. National Lead Co.*,
    352 U.S. 419 (1957) .................................................................................. 4

*Gen. Media Communications, Inc. v. Cohen*,
    131 F.3d 273 (2d Cir. 1997) ...................................................................... 8

*Johnson v. United States*,
    135 S. Ct. 2551 (2015) ........................................................................ 7, 8

*Louisiana Pub. Serv. Comm'n v. FCC*,
    476 U.S. 355 (1986) ............................................................................. 4, 5

*Marbury v. Madison*,
    5 U.S. 137 (1803) ...................................................................................... 5

*McBurney v. Young*,
    133 S.Ct. 1709 (2013) ............................................................................... 8

*One 1958 Plymouth Sedan v. Pennsylvania*,
    380 U.S. 693 (1965) .................................................................................. 8

ii

REPLY MEMORANDUM BY DEFENDANTS D & D, et al. ISO MOTION FOR CERTIFICATION OF
INTERLOCUTORY APPEAL & CONCOMITANT STAY

2712163v.1

*Pentheny, Ltd. v. Government of Virgin Islands*,
 360 F.2d 786 (3d Cir. 1966) ...................................................................... 5

*PHH Corp. v. CFPB*,
 839 F.3d 1 (D.C. Cir. 2016) ................................................................. 1, 10

*PHH Corp. v. CFPB*,
 2017 U.S. App. Lexis 2733 (Feb. 16, 2017) ............................................. 2

*Red Lion Broadcasting Co. v. FCC*,
 395 U.S. 367 (1969) ................................................................................ 11

*Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*,
 455 U.S. 489 (1982) .............................................................................. 7, 8

**Rules**

Fed. R. App. Proc.,

 Rule 35(a)(2) .............................................................................................. 2

 Rule 35(b)(1)(B) ........................................................................................ 2

**Other Authorities**

28 U.S.C. § 1292(b) ............................................................................................ 2, 10

U.S. Constitution,

 Art. II .................................................................................................... 2, 4

 Art. III ....................................................................................................... 4

iii
REPLY MEMORANDUM BY DEFENDANTS D & D, et al. ISO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY
2712163v.1

# MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION

Refusing to even acknowledge the key decisions cited in the moving papers filed by defendants D and D Marketing, Inc., d/b/a T3 Leads, Grigor Demirchyan, and Marina Demirchyan (collectively "D&D"), the Bureau asks this Court to sweep the major constitutional issues presented in this case under the rug. The Bureau's main motivation is to obtain an unfair litigation advantage by rushing this case to trial so that the Bureau can seek millions of dollars in damages, while using the threat of such crushing liability at the pre-trial stage to force a settlement. Because a post-judgment appeal would not be feasible, the Bureau's suggestion to defer appellate review of the key dispositive issues presented here should be rejected.

## DISCUSSION

I.  **Each of the Two Questions Presented Justify Interlocutory Appellate Review.**

   A.  **The constitutional issues presented here, in terms of the constitutionality of the Bureau's structure and the proper remedy to resolve its structural flaw, present controlling questions of law involving substantial ground for difference of opinion.**

      1.  **The constitutionality of the Bureau's structure requires immediate appellate review.**

In its moving papers, D&D argued that the proper remedy to resolve the structural flaw found in *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016) presents

a controlling legal question. (Motion, pp. 5-8.) After D&D filed its motion for certification, the Bureau's petition for rehearing en banc was granted. To review the panel's decision, the order granting rehearing requested briefing on the following issues, among others:

> "Is the CFPB's structure as a single-Director independent agency consistent with Article II of the Constitution and, if not, is the proper remedy to sever the for-cause provision of the statute?" (*PHH Corp. v. CFPB*, 2017 U.S. App. Lexis 2733 at *5-6 (Feb. 16, 2017)).

Because en banc review is justified to resolve questions of "exceptional importance" (FRAP 35(a)(2)), the mere fact that rehearing was granted in that case to resolve this issue substantiates D&D's position that an interlocutory appeal is justified here. After all, the standards for granting rehearing en banc and certification under the interlocutory appeal statute are effectively the same. *Compare* 28 U.S.C. § 1292(b) (authorizing such relief to resolve "a controlling question of law as to which there is substantial ground for difference of opinion") *with* FRAP 35(b)(1)(B) (en banc review warranted to resolve issues of exceptional importance involving inter-circuit conflict).

The Bureau's attempt to downplay the significance of the constitutional issues associated with its structural flaw contradicts its own arguments in its rehearing petition. In successfully seeking en banc review, the Bureau argued that the structural flaw was found by the *PHH* panel majority in what "may be the most important separation-of-powers case in a generation." (*Pet. for Reh'g*, p.1, Nov. 18, 2016, ECF No. 1646917.) In addition to arguing that the panel majority's view in that case "presents an issue of exceptional importance" (*id.* at 2), the Bureau argued that the decision, as interpreted by the majority, conflicted with Supreme Court precedent. (*Id.* at 1-2.) Here, on the other hand, the Bureau advances the

exact opposite view, claiming that the identical issue presented here does not warrant appellate review because it is neither controlling nor in conflict with any other authority. (Opp. 3-4.) The Bureau does not explain its radical change of heart over the past four months since it filed its rehearing petition, thus raising serious credibility issues with its current position.

After finally acknowledging—albeit implicitly—that the courts are divided over the "underlying constitutionality question," the Bureau argues that "there is no substantial ground for difference of opinion" regarding the remedy question implicated by the antecedent constitutionality question. (*Id.* at 4:6-7.) The Bureau, however, conveniently refuses to acknowledge, distinguish or reconcile the contrary, pro-D&D view adopted in *Federal Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), invoked in D&D's motion. (Motion, p. 9.) While that court held that it could not "declare the Commission's structure unconstitutional without providing relief to the appellants" where "appellants raise[d] the constitutional challenge as a defense to an enforcement action" pursued by a federal agency (*NRA*, at 822), this Court refused to grant the relief requested by D&D – dismissal – *despite* finding a structural flaw. (Order Denying Defendants' Motion to Dismiss, pp. 7-8, Nov. 17, 2016, ECF No. 57). That, by itself, perfectly illustrates the direct conflict invoked by D&D, refuting the Bureau's denial of the divergence of opinion on this critical issue. In sum, while the Bureau's refusal to acknowledge *NRA* is somewhat understandable – though misguided – its decision to remain in denial about the lack of uniformity of the law is perplexing.

Moreover, contrary to the Bureau's assumption, the merits of the questions presented here are irrelevant at this particular stage in deciding whether to grant the motion for certification. A party seeking an interlocutory appeal is not required to establish a likelihood of success in terms of the ultimate adoption of its view. That merits question will be addressed by the appellate court once this motion is

granted. Therefore, to the extent that the Bureau is attempting to litigate the merits of the issues presented (Opp. 4-5), that approach is equally futile.

### 2. The proper remedy required to address the Bureau's structural flaw presents a subsidiary issue that similarly justifies appellate review.

Continuing with its aggressive efforts to avoid appellate review, the Bureau also argues that the structural flaws invoked by D&D have absolutely no legal implication here, claiming that "any Article II infirmity does not impact the Bureau's Article III standing." (Opp. 5.) The Bureau is wrong again. While the Bureau cites a split decision by the Ninth Circuit to support its position (Opp. 5), it "fails to even address how a Bureau with no executive power has standing to bring a civil enforcement action." *CFPB v. Gordon*, 819 F.3d 1179, 1201 (9th Cir. 2016) (Ikuta, J., dissenting), *petition for cert. filed,* Nov. 22, 2016 (No. 16-673). Assuming that the Bureau is correct on the merits of this issue, the split *Gordon* decision invoked by the Bureau itself illustrates the lack of uniformity regarding the proper remedy for the structural violation that this Court previously found.

The Bureau's position is wrong for additional reasons. It is a fundamental tenet of administrative law that a federal agency is "a creation of Congress" that possesses "only" "the powers Congress specifically granted it." *American Fin. Servs. Ass'n v. FTC,* 767 F.2d 957, 965 (D.C. Cir. 1985). "As the Court has said many times before, the Commission may exercise only the powers granted it by the Act." *FTC v. National Lead Co.*, 352 U.S. 419, 428 (1957). Beyond the scope of its statutory authority, "an agency literally has no power to act." *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374 (1986). Conversely, if the Bureau's structure is inherently flawed – e.g., due to a constitutional violation – the Bureau is not

4

**REPLY MEMORANDUM BY DEFENDANTS D & D, et al. ISO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY**

2712163v.1

"empowered" to do anything with respect to D&D because the Bureau "literally has no power to act." *Ibid.*[1]

Consistent with our view, the Supreme Court has enforced the constitutional requirement to provide an adequate remedy when violations of other constitutional provisions are established. In the context of regulatory takings, for example, the Court has held that, as a matter of constitutional law, regulatory takings that are ultimately invalidated by the courts trigger the imposition of a damages remedy so that property owners can seek monetary relief when one's property is temporarily taken in violation of the Fifth Amendment. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 322 (1987). Overruling prior case law, the Court rejected the notion that a constitutional violation of the Takings Clause can be adequately addressed by merely invalidating the regulation without the payment of monetary damages for the damages sustained during the interim prior to the invalidation of the regulation. This is a basic application of the rule announced in *Marbury v. Madison*, 5 U.S. 137, 163 (1803) that there must be a proper remedy for the violation of a legal right.

In sum, our system of remedies must be stringent enough to keep the government within the bounds of the law. Because the severance remedy suggested by the Bureau fails this basic test, it is not a constitutionally-adequate remedy.

---

[1] Likewise, in analogous circumstances, courts and agencies have recognized that agency "jurisdiction, although once obtained, may be lost" if the proceeding at any point exceeds the agency's statutory authority. *Pentheny, Ltd. v. Government of Virgin Islands*, 360 F.2d 786, 790 (3d Cir. 1966). When that happens, "proceedings cannot validly be continued beyond the point at which jurisdiction ceases." *Ibid.*

While the Bureau disagrees with D&D's view, appellate review is critically needed on this significant issue.[2]

### B. The second issue presented, regarding the evaluation of D&D's statutory vagueness arguments, independently justifies interlocutory appellate review.

The Bureau misconstrues D&D's argument regarding the second question presented for interlocutory appellate review (Motion, p. 1), arguing that D&D's "claim that the Court considered only the facial validity of the CFPA" is incorrect. (Opp. 8.) D&D's position, however, is that facial validity of a statute does not, in and of itself, preclude an as-applied challenge.

While it is true that some courts have decided as-applied challenges by merely examining the text of the statute and rejecting the as-applied challenge (Motion, p. 12, Opp. 9, fn. 35), the analytical flaw employed in such cases is that this approach erroneously merges the two types of challenges (facial and as-applied challenges) into one. Because a statute may be unconstitutional as-applied,

---

[2] The Bureau also makes a half-hearted claim that the remedy issue was not preserved. (Opp. 6.) The remedy question, however, is necessarily subsumed in the primary issue regarding whether there is a constitutional violation in the first place. The Bureau also complains that D&D had incorporated Formichev's constitutional arguments by reference, suggesting some sort of waiver (Opp. 6-7), despite the Bureau's quotation of the constitutional arguments from D&D's own moving papers. (Opp. 8, fn. 32.) As this Court explained in its prior order, for purposes of "judicial convenience and efficiency" (Order, Sept. 13, 2016, Doc. No. 47), the motions to dismiss filed by D&D and Formichev were continued for hearing on the same date. In adopting this approach, the Court observed – and implicitly approved – the parties' decision to "incorporate by reference arguments raised by other Defendants." (*Id.*) By issuing a single order addressing all three motions (Order, Nov. 17, 2016), the Court applied the same approach to promote efficiency, thus precluding any suggestion of procedural waiver.

even if it is otherwise facially valid, the Bureau's attempt to use one standard to adjudicate the other form of challenge is inherently flawed. That question independently justifies interlocutory appellate review for the reasons discussed in the moving papers. (Motion, pp. 13-15.)

The Bureau also argues that there is no "difference of opinion on the subsidiary question relating to the standard the Court applied in evaluating the defendants' as-applied vagueness challenge." (Opp. 9:9-11.) The Bureau insists that "a less strict vagueness test" applies to challenges to statutes that regulate business entities. (Opp. 9:11-15.)

Contrary to the Bureau's view, however, the Court has identified two characteristics of civil laws that trigger strict vagueness analysis: whether the law serves purposes akin to criminal sanctions and whether the law's application infringes on a constitutional right. In either scenario, a strict vagueness test applies, even if the law regulates economic activities.

In *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489 (1982), for example, the Court observed that although the ordinance "nominally impose[d] only civil penalties," it was "quasi-criminal" because of its "prohibitory and stigmatizing effect." 455 U.S. at 499. For that reason, it "warrant[ed] a relatively strict" vagueness test. *Ibid.*; see also *Champlin Ref. Co. v. Corp. Comm'n*, 286 U.S. 210, 241 (1932) (finding a civil statute unconstitutionally vague where the civil penalty was "not consistent with any purpose other than to inflict punishment"). The relief sought by the Bureau here – "civil money [sic] penalties" and "disgorgement of ill-gotten revenues" (Amended Complaint, p. 18, ¶¶ 6-7) – is quasi-criminal, thus triggering the application of a strict vagueness test here. See *Johnson v. United States,* 135 S. Ct. 2551, 2567, fn. 1 (2015) (Kennedy,

7
REPLY MEMORANDUM BY DEFENDANTS D & D, et al. ISO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY

2712163v.1

J., concurring) ("a law imposing a monetary exaction as a punishment for noncompliance with a regulatory mandate is penal"). [3]

Consistent with D&D's position, the Supreme Court has also applied a strict vagueness standard to civil statutes that involve deprivation of fundamental rights. The *Hoffman* Court explained that "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." 455 U.S. at 499. See also *Gen. Media Communications, Inc. v. Cohen*, 131 F.3d 273, 286 (2d Cir. 1997) ("[S]tatutes that implicate constitutionally protected rights ... are subject to 'more stringent' vagueness analysis" (quoting *Hoffman*, 455 U.S. at 499)). To the extent the Bureau is challenging D&D's advertising activities (Amended Complaint, pp. 4-5, ¶¶ 8-10) or the content of those ads, additional constitutionally-protected rights are implicated here (e.g., First Amendment rights), thus further justifying strict review.

To summarize, courts apply strict vagueness review to civil statutes such as the ones implicated here for at least two reasons: because their penalties serve the purposes of criminal punishment and because their penalties put fundamental rights at stake. Cf. *McBurney v. Young*, 133 S.Ct. 1709, 1715 (2013) (noting that the opportunity to pursue a common calling is a fundamental right, protected by the Privileges and Immunities Clause). Therefore, the Bureau's position that "economic regulation is subject to a less strict vagueness test" is legally inaccurate. (Opp. 10:10-11.) At a minimum, the difference of opinion as to the appropriate

---

[3] The conclusion that protections typically reserved for the criminal context apply to civil proceedings when the penalty is retributive, and therefore quasi-criminal, is not limited to the vagueness doctrine. In *One 1958 Plymouth Sedan v. Pennsylvania*, the Court applied the exclusionary rule, another protection typically confined to criminal proceedings, in a civil forfeiture proceeding because "a forfeiture proceeding is quasi-criminal in character" – "[i]ts object, like a criminal proceeding, is to penalize for the commission of an offense against the law." 380 U.S. 693, 700 (1965).

test, as evidenced by the competing lines of authority invoked by both sides, justifies interlocutory review.

The Bureau also argues that D&D has not articulated "how the CFPA authorizes or even encourages arbitrary and discriminatory enforcement." (Opp. 11:4-5.) As D&D explained in its moving papers, however, the Bureau's self-serving interpretation of what the CFPA bans allows the Bureau to administer the law based on its own eye-of-the-beholder test in interpreting or applying the law – i.e., in whatever manner the Bureau sees fit. (Motion, pp. 13-14.) Exacerbating the statutory vagueness issues presented here, the Bureau's attempt to apply its own, unilateral and novel interpretation of the CFPA represents another form of arbitrary enforcement, conduct that is directly precluded by the Due Process Clause. *Id.* at 14-15 (collecting cases.)

Summarily dismissing this critical point, the Bureau claims that D&D has failed "to show that this issue is relevant, much less a controlling issue." (Opp. 11:8-9.) This is an odd argument, given that a violation of the Due Process Clause, by definition, precludes the imposition of liability.

To summarize, the additional questions presented here – regarding the proper test for evaluating as-applied challenges and whether the statute at issue is unconstitutionally vague – independently justify appellate review.

## II.  An Interlocutory Appeal Would Materially Advance the Ultimate Disposition of This Litigation.

The Bureau also maintains that an interlocutory appeal would delay the proceedings pending in this Court, thus precluding an interlocutory appeal. (Opp. 16-24.)

The obvious fallacy in this argument is that all appeals, interlocutory or otherwise, inherently result in some delay. Under the Bureau's view, however, no

one could ever obtain interlocutory appellate review because there will *always* be some delay associated with such an appeal. In essence, the Bureau seeks to nullify Congress's decision to enact this procedural mechanism to access the appellate court while the case is pending in the district court. (28 U.S.C. § 1292(b).)

The Bureau also claims that interlocutory review is inappropriate because the Ninth Circuit may ultimately uphold the constitutionality of the Bureau's structure, thus rendering moot the subsidiary issue regarding the proper remedy for an unconstitutional, structural flaw. But the opposite scenario is also possible. If the Ninth Circuit deems the Bureau's structure to be unconstitutional, the remedy issue will necessarily have to be decided. If the Court of Appeals agrees with D&D that the Bureau's unconstitutional structure may be raised as an affirmative defense (e.g., based on the plaintiff's lack of standing), D&D will necessarily prevail. At this point, of course, D&D does not have to show which party has a higher likelihood of success to pursue interlocutory appellate review; unlike the Bureau, D&D does not profess to have a crystal ball either.

### III. A Stay Is Fully Justified in This Case, Particularly Given the Bureau's Position Regarding the Exceptional, National Importance of the Issues presented in This Case.

Directly contradicting its position that the *PHH* panel majority's decision finding a structural flaw represents "the most important separation-of-powers case in a generation" (*PHH Corp. v. CFPB*, No. 15-1177, *Pet. for Reh'g*, p.1, Nov. 18, 2016, ECF No. 1646917), the Bureau now claims that appellate resolution of the identical issues here do not justify a stay. The grounds offered by the Bureau to challenge D&D's stay request are factually, procedurally and legally wrong.

First, while the Bureau accuses D&D of undue delay in presenting its motion for certification, this factual assertion is simply flawed. The motion was filed less

than six weeks after this Court issued its 26-page order, addressing various complicated constitutional issues. The law in this area remains highly fluid, as evidenced by the district court decision cited by the Bureau granting a similar motion for certification. Opp., p. 16, fn. 71 (citing *CFPB v. CashCall, Inc.* 15-cv-7522-JFW (RAOx) (C.D. Cal. Jan. 3, 2017)). Under such circumstances, the Bureau's undue-delay claim is hard to reconcile with reality. (See Declaration of Herbert P. Kunowski, filed concurrently, ¶¶ 2-3.)

The Bureau also claims that D&D has failed to show a likelihood of success to justify a stay because "any unconstitutional infirmity in the Bureau's structure may be remedied." (Opp. 19.) This argument is premised on circular reasoning, because it assumes that the jurisdictional issues presented here, in terms of the Bureau's lack of standing, may be relegated to the harmless-error category.

The Bureau also argues that a stay is not justified because the public has a significant interest in enforcing the challenged laws. But the public also has a significant interest in ensuring that the government plays by the rules dictated by the Constitution. In fact, the whole concept of the private attorney general doctrine – though no longer applicable in federal courts – is based on the premise that citizens should be encouraged to challenge government conduct that threatens the constitutional protections envisioned by the Framers. Where, as here, an agency "has been left a free hand to vindicate its own idiosyncratic conception of the public interest" (*Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 395 (1969)), the due process concerns raised here become paramount. Under such circumstances, rushing this case to trial, by sweeping the significant constitutional issues presented here under the rug, is certainly not the solution.

The relief being sought by D&D here is the same as the relief sought by the Bureau itself in its rehearing petition. The only difference is the number of appellate judges to be assigned, the location of the appellate court and the color of the appellate brief covers.

**REPLY MEMORANDUM BY DEFENDANTS D & D, et al. ISO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL & CONCOMITANT STAY**

2712163v.1

## CONCLUSION

The motion should be granted.

Respectfully submitted,

Dated: March 13, 2017	WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP


By: */s/ Robert Cooper*
　　Robert Cooper
　　Attorneys for Defendants,
　　D and D Marketing, Inc., d/b/a T3Leads,
　　Grigor Demirchyan, and Marina
　　Demirchyan