BARRY REIFERSON (*pro hac vice*)
Email: barry.reiferson@cfpb.gov
MEGHAN SHERMAN CATER (*pro hac vice*)
Email: meghan.sherman@cfpb.gov
JADE A. BURNS (*pro hac vice*)
Email: jade.burns@cfpb.gov
LEANNE E. HARTMANN, CA Bar #264787
Email: leanne.hartmann@cfpb.gov
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: (212) 328-7020
Facsimile: (202) 435-7329

Attorneys for Plaintiff, Consumer Financial Protection Bureau

PATRICK M. KELLY (SBN 45426)
patrick.kelly@wilsonelser.com
HERBERT P. KUNOWSKI (SBN 150141)
herbert.kunowski@wilsonelser.com
WILSON, ELSER, MOSKOWITZ, EDELMAN &DICKER LLP
555 South Flower Street, Suite 2900
Los Angeles, CA 90071
Telephone: 213.443.5100
Facsimile: 213.443.5101

Attorneys for Defendants D and D Marketing, Inc., d/b/a T3Leads; Grigor Demirchyan; and Marina Demirchyan

STEVEN B. SOLTMAN, ESQ., SBN 108649
Email: ssoltman@slfesq.com
PHILIP E. BLACK, ESQ., SBN 112779
Email: pblack@sflesq.com
SOLTMAN, LEVITT, FLAHERTY & WATTLES LLP
90 E. Thousand Oaks Blvd., Ste. 300
Thousand Oaks, CA 91360
Telephone: (805) 497-7706; Facsimile: (805) 497-1147

Attorneys for Defendant Dmitry Fomichev

Joint Status Report on Mediation and Joint Brief

2838168v.1
2838406v.1
2838964v.1

ABRAHAM J. COLMAN (SBN 146933)
Email: acolman@reedsmith.com
RAFFI KASSABIAN (SBN 260358)
Email: rkassabian@reedsmith.com
JAMES A. ROLFES (*pro hac vice*)
Email: jrolfes@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000; Facsimile: +1 213 457 8080

Attorneys for Defendant Davit Gasparyan, a/k/a David Gasparyan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>D and D Marketing, Inc., d/b/a T3Leads, *et al.*,<br><br>Defendants. | CASE NO. 2:15-cv-09692-PSG(Ex)<br><br>(consolidated for pretrial purposes with Case Nos. 2:16-cv-02724-PSG(Ex) and 2:16-cv-02725-PSG(Ex))<br><br>**JOINT STATUS REPORT ON MEDIATION AND JOINT BRIEF**<br><br>**Hon. Philip S. Gutierrez**<br><br><u>Scheduling Conference:</u><br>Date:  August 21, 2017<br>Time:  2:00 p.m.<br>**Courtroom:  6A**<br>**Courthouse:  First Street** |

Plaintiff Consumer Financial Protection Bureau (the "Bureau") and Defendants D and D Marketing d/b/a T3Leads ("T3"), Marina Demirchyan, Grigor Demirchyan, Dmitry Fomichev, and Davit Gasparyan (a/k/a David Gasparyan) ("Defendants" and

collectively with the Bureau, the "Parties") hereby provide the following Joint Status Report on Mediation and Joint Brief as ordered by this Court.

**Mediation:**

Despite extensive efforts by all Parties, mediation was unsuccessful in resolving this matter. Although the Parties have ended formal mediation, the Bureau has agreed with each set of Defendants to continue settlement discussions at this time.

**Bureau's Position on Discovery and Scheduling:**

The Bureau understood that the Court-ordered meet-and-confer would be a robust discussion between the Parties aimed at providing the Court with either an agreement or a single set of issues in order to help inform a scheduling order. With that understanding, the Bureau urged the Defendants to propose a reasonable schedule to which the Bureau might agree, and, where we disagree, to work towards presenting the Court with a concise joint statement. The Defendants instead peppered the Bureau with specific evidentiary questions for more than an hour, and insisted that the Bureau disclose its precise litigation strategy, and identify all evidence to be used to support a summary judgment motion. The Defendants also insisted on presenting separate statements as was done in May rather than providing the Court with a joint statement identifying issues of disagreement among the Parties.

The Bureau attempts herein to provide a concise statement to assist the Court. Further, the Bureau does not oppose the Defendants' proposed schedule which the Bureau believes to be less aggressive than possible but not unreasonable.

The primary disagreement seems to be over whether unfair and abusive conduct under the Consumer Financial Protection Act of 2010 (CFPA) is analyzed under an objective or subjective standard. The Bureau contends that it is analyzed

under an objective standard. As under the FTC Act, on which the CFPA was modeled, the matter is determined by an analysis of whether conduct "is likely to mislead consumers acting reasonably under the circumstances." *See FTC v. Gill*, 265 F.3d 944, 950. (9th Cir. Sept. 12, 2001). The Defendants believe that the matter is a subjective one, requiring "taking discovery of the consumers, lead generators, lenders and other lead purchasers involved." Such broad discovery is neither necessary under an objective analysis nor practical in a case like this one with millions of consumer-loan-leads at issue. Courts' consideration of class-action cases is instructive. District courts in this district have typically held that common questions predominate in class actions involving various states' consumer protection laws because they all use objective criteria to judge deceptive acts. *See, e.g., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the [California] CLRA, FAL, and UCL."); *Keegan v. American Honda Motor Corp.*, 284 F.R.D. 504, 542 (C.D. Cal. 2012) (finding that California, New York, and Florida consumer protection laws all use objective criteria to determine whether a practice is deceptive). This case may be viewed similarly.

Contrary to the Defendants' statement here, the Bureau has not been vague on the damages portion of this case. The Bureau has amended its initial disclosures and filed a "Stipulation Memorializing Plaintiff's Agreement to Restrict the Scope of Plaintiff's Claimed Relief" (Dkt. Entry 98). The applicable civil money penalties are statutorily prescribed (*see* 12 U.S.C. § 5565; 12 C.F.R. § 1083.1) and will be based on the number of leads T3 conveyed. Indeed, the Bureau does contend that every lead T3 handled was subject to T3's illegal conduct. As further described in the Complaint, some leads were the subject of additional illegal conduct in the form of misstatements. Some of those misstatements were stated in the Complaint and others

may be uncovered during discovery. All Parties have the same access to produced documents and, of course, the Defendants have greater knowledge of T3's practices than does the Bureau. As to disgorgement, the Bureau described its burden in open court during the last scheduling conference: this case involves non-restitutionary disgorgement, which requires only a reasonable approximation of ill-gotten gains upon which the burden shifts to the Defendants to prove unreasonableness. *See*, *e.g.*, *SEC v. Aletheia Research & Mgmt.*, CV 12-10692-JFW (RZx), 2015 U.S. Dist. LEXIS 61576, at *6-7 (C.D. Cal. May 11, 2015). Where, as here, the Defendants' conduct affected all leads they handled, they both possess the relevant information already and are subject to disgorgement for all revenues derived from the business activity.

The Parties agree that there may be significant discovery disputes. But, the Bureau does not believe that should guide the Court's determination of an appropriate schedule. The Court addressed this issue by referring discovery matters to Judge Eick for resolution as they arise.

Finally, the Bureau does not believe this report is an appropriate vehicle for the Defendants' supplemental stay-motion arguments. The Bureau will refrain from similar inappropriate supplementation.

**Defendants' Position on Discovery and Scheduling:**

Pursuant to this Court's prior order, the Parties met and conferred in person on August 16, 2017, to discuss whether the Bureau's previously announced plan to file a summary judgment motion would allow the Parties to agree upon a more tailored discovery plan.

The Bureau generally outlined its position that Defendant T3 employed an improper business model that was not disclosed adequately to consumers, making

every representation given to consumers misleading. The Bureau further opined that T3's business model led to consumers obtaining loans with terms prohibited under state or federal law. The Bureau believes that this conduct represents an unfair and/or abusive practice under the Consumer Financial Protection Act, a finding the Bureau believes the Court will reach using an objective standard that does not depend on facts associated with individual transactions. When asked how the Bureau would prove: (1) the content of representations made to consumers by third parties; (2) the materiality of those representations to consumers; (3) the likelihood that such representations misled consumers; (4) the substantial injury consumers suffered; (5) the absence of countervailing benefits to consumers or competition; (6) the inability of consumers to understand the terms, risks, costs or conditions of their loans; and (7) the inability of consumers to protect their interests, the Bureau opined that while it may provide examples of transactions to demonstrate such elements of the claims alleged, or perhaps statistical surveys involving such transactions, the Bureau did not believe it necessary to present such evidence. When asked what evidence it would present, the Bureau expressed the view that it did not have to reveal its intended proof at this time. The Bureau further opined that factual evidence is likely unnecessary. While the Bureau now analogizes its case to a class action, it fails to acknowledge that the Bureau, and not any appropriate class representative, is the Plaintiff here, and none of the protections attendant to class action certification exists here for such extraordinary remedy.

The Bureau further remained vague as to the types of monetary recovery it would ultimately seek, the time period encompassed, and how it intended to prove-up such recovery. While the Bureau continues to pursue disgorgement of revenues and alleged unjust enrichment, it disputes that it will need to prove-up the alleged wrongful transactions from the hundreds of thousands of transactions involved.

Likewise, while the Bureau continues to pursue statutory penalties of $1,087,450 *per day* for alleged knowing violations of the Act, the Bureau continues to ignore the necessary discovery that will be required for evidence that the Court is statutorily required to take into account on the severity of the risks and losses to consumers, and the gravity of the purported violations. 12 U.S.C. § 5565(c)(3).

Defendants believe that determining whether a practice is either unfair or abusive under the Consumer Financial Protection Act is intrinsically factual. In discovery, the Bureau must identify all acts it claims have led to the violations it alleges (*e.g.,* specific misrepresentations, illegal loan terms, consumer confusion, consumer harm). Defendants intend to test those allegations by taking discovery of the consumers, lead generators, lenders and other lead purchasers involved. To the extent the Bureau relies on statistical evidence and sampling, Defendants intend to take discovery to understand the nature of the consumer population about which the Bureau seeks to draw its statistical conclusions. Along with discovery of consumers, lead generators, lenders and other lead purchasers, Defendants will further need to take discovery of the Bureau itself, to prove that the acts it claims are unfair or abusive do not meet the criteria Congress established for defining unfair or abusive practices. Defendants will also need substantial discovery from consumers and lenders regarding the injury purportedly suffered by consumers.

As the above suggests, the Bureau's articulation of its claims and the relief it is seeking remain quite broad and extensive, involving hundreds of thousands of consumer transactions; thousands of third-party lead generators, lenders, other lead purchasers and vendors; an expansive time period; thousands of potential alleged misrepresentations; and untold number of loan forms, fees and rates. Third parties, and not the Defendants, continue to hold a substantial volume of the documents related to the Bureau's claims, along with the testimony that the Bureau will need to

Joint Status Report on Mediation and Joint Brief

2838168v.1
2838406v.1
2838964v.1

prove its claims. Extensive expert discovery will also be necessary to rebut the Bureau's statistical analysis that the alleged consumer transactions were unfair and/or abusive. Given the continuing broad nature of the Bureau's claims and the extensive relief it is seeking, Defendants continue to require discovery on the following subjects, within the scope of allowable discovery, with the timeline for Defendants' proposed schedule set forth in the table below:

- Documents, testimony and witness statements obtained during the Bureau's prior investigations;
- Each transaction, consumer, lead generator, lead purchaser and lender allegedly involved in any violations of the Act;
- Communications between consumers and lenders, prospective lenders, and other lead purchasers;
- Credit histories and loans obtained by alleged affected consumers;
- Each loan made to alleged affected consumers, as well as the fees and interest paid on those loans;
- Each representation made to the alleged affected consumers that serve as the basis of the Bureau's claims;
- Conduct of actual or prospective lead generators, lead purchasers, lenders, vendors, and "business partners and associates" to the extent the Bureau claims such conduct forms a basis of, or evidences, Defendants' alleged violation of the Consumer Financial Protection Act;
- The Bureau's deliberations and actions to define relevant conduct as "unfair" or "abusive," including its efforts to consult with other federal agencies in doing so;
- Evidence the Bureau claims serve as a basis for the monetary penalties being sought by it; and
- Testifying expert witnesses and their submissions upon which the other Party may rely.

Additionally, discovery to date has consistently been disputed given the novelty of the Bureau's claims, its attempts to obtain information protected by the First Amendment or privilege, and the Bureau's refusal to fully disclose its materials. Defendants anticipate significant discovery-related motion practice given the lack of precedent on these matters.

Joint Status Report on Mediation and Joint Brief

2838168v.1
2838406v.1
2838964v.1

Understanding, however, the Court's encouragement for the Parties to set an aggressive discovery schedule, Defendants propose the following dates:

| Event | Defendants' Proposal |
|---|---|
| Deadline to Complete Fact Discovery, including Depositions | July 9, 2018 |
| Deadline to Disclose Expert Witnesses Under Rule 26(a)(2) and Produce Expert Reports | August 20, 2018 |
| Deadline to Disclose Rebuttal Expert Witnesses and Produce Rebuttal Expert Reports | September 21, 2018 |
| Deadline to Complete Expert Discovery | November 19, 2018 |
| Deadline for Filing Motions, including Dispositive Motions (each party expects to file a motion under Rule 56) | December 28, 2018 |

Given the extensive breadth and scope of the Bureau's claims and the relief that it continues to seek, the discovery that is necessary, and recognizing that a decision on consolidation for trial has not been made, nor has the Bureau provided sufficient reason for doing so, Defendants continue to believe that a decision on trial dates and their length should be postponed until after the conclusion of discovery.

Finally, Defendants respectfully encourage the Court to stay discovery for the reasons stated in their briefs in support of the pending Motion to Stay Case Pending Disposition of Appeal. [Dkt. Nos. 90; 97; 101; 112; 131; and 145] . Such stays are routinely granted in cases in which a circuit court, like the Ninth Circuit here, has granted a petition for interlocutory appeal pursuant to Section 1292(b). The Bureau

has not demonstrated any basis to believe these matters represent outlier cases that the Court should allow to undermine the Ninth Circuit's decision that an appellate court ruling on specific legal issues could avoid the waste of judicial and party resources.

T3's conduct at issue in this case does not threaten immediate harm to consumers. T3 is a technology company that efficiently links, through the internet, consumers who seek products or services, here small dollar loans, with persons who provide those products or services, here lenders who provide small dollar loans. T3 does not provide any financial products or loans. The Bureau has brought this case in substantial part because Native American Indian tribes participate in seeking consumer leads conducted on T3's platform and the Bureau takes issue with the lending practices of those tribes. The loans made by the tribes based on leads obtained through T3 represent an insignificant portion of the loans made by tribal lenders, and any injunction issued in this case will not have any material effect on the lending done by the Indian tribes. Moreover, the Bureau has not deemed such tribal lending practices a sufficiently immediate threat to consumers to issue rules regarding tribal lending, bring enforcement actions against the vast majority of the tribes undertaking such practices, or encourage Congress to pass laws regarding the tribal practices to which the Bureau takes issue. Simply put, there is no need for this case to proceed before the disposition of Defendants' appeal on threshold constitutional issues, or if discovery does proceed, to do so on an unfairly expedited or truncated schedule.

///

///

Joint Status Report on Mediation and Joint Brief

2838168v.1
2838406v.1
2838964v.1

Dated: August 17, 2017

Respectfully submitted,

| Consumer Financial Protection Bureau | Soltman, Levitt, Flaherty & Wattles LLP |
|---|---|
| /s/ Barry Reiferson | /s/ Philip E. Black |
| Barry Reiferson (*pro hac vice*) | Philip E. Black, SBN 112779 |
| Attorney for Plaintiff, | Attorney for Defendant, |
| Consumer Financial Protection Bureau | Dmitry Fomichev |
| | |
| Wilson, Elser, Moskowitz, Edelman & Dicker LLP | Reed Smith LLP |
| /s/ Herbert P. Kunowski | /s/ James A. Rolfes |
| Patrick M. Kelly, SBN 45426 | Abraham J. Colman, SBN 146933 |
| Herbert P. Kunowski, SBN 150141 | Raffi Kassabian SBN 260358 |
| Attorney for Defendants, | James A. Rolfes (*pro hac vice*) |
| D and D Marketing, Inc., d/b/a T3Leads; Grigor Demirchyan; and Marina Demirchyan | Attorneys for Defendant, Davit Gasparyan, a/k/a David Gasparyan |

**Attestation Pursuant To Local Rule 5-4.3.4**

I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing of this document.

REED SMITH LLP

/s/ Raffi Kassabian
Raffi Kassabian