E-FILED 3/28/19

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. 2:15-cv-9692-PSG(Ex) |
| Plaintiff, | |
| v. | |
| D and D Marketing, Inc. d/b/a T3Leads, *et al*. | **STIPULATED FINAL JUDGMENT AND ORDER** |
| Defendants. | |

The plaintiff (Bureau) commenced a civil action (Case No. 2:15-cv-9692-PSG(Ex)) on December 15, 2015, against D and D Marketing, Inc. d/b/a T3Leads (T3), Marina Demirchyan, and Grigor Demirchyan. (T3, Marina Demirchyan, and Grigor Demirchyan together referred to hereinafter as the Defendants and, with the Bureau, as the Parties). The Bureau alleges in its First Amended Complaint that T3

engaged in unfair and abusive practices in connection with its receipt of consumer information (called "Leads") from lead generators that market loans and T3's conveyance of those Leads to lenders and other Lead recipients, and that the individual defendants violated § 1036(a)(3) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5536(a)(3), by substantially assisting T3's unlawful conduct. The Bureau sought to obtain injunctive relief, disgorgement, and other relief against the Defendants.

The Parties agree to the entry of this Stipulated Final Judgment and Order (Order).

**THEREFORE, it is ORDERED:**

### Findings and Conclusions

1.     This Court has jurisdiction over the Parties and the subject matter of this action.

2.     The Parties agree to entry of this Order, without further adjudication of any issue of fact or law.

3.     The Defendants neither admit nor deny any allegations in the Complaints, except as specifically stated in this Order. For purposes of this Order, the Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of the Cases.

4.      The Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and waive any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of the Cases, to the date of this Order.

5.      Each Party shall bear its own costs and expenses, including, without limitation, attorneys' fees.

6.      Entry of this Order is in the public interest.

## Definitions

7.      "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in section 1002(5) of the CFPA, 12 U.S.C. § 5481(5).

8.      "Corporate Defendant" means defendant D and D Marketing, Inc. d/b/a T3Leads and its successors and assigns.

9.      "Data Broker" means a Person that collects consumers' personal information and conveys or shares that information with others.

10.      "Defendants" means the Corporate Defendant and the Individual Defendants.

11.      "Effective Date" means the date this Order is entered.

12.   "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

13.   "Individual Defendants" means defendants Grigor Demirchyan and Marina Demirchyan.

14.   "Lead" is a consumer's personal information received, transmitted, or otherwise used in connection with a Consumer Financial Product or Service.

15.   "Lead Aggregators" are Persons that obtain Leads and convey that information to other Persons. "Lead Aggregation" is the practice of acting as a Lead Aggregator.

16.   "Lead Generators" are Persons that obtain Leads and transmit the Leads to Lead Aggregators or to other Persons. "Lead Generation" is the practice of acting as a Lead Generator.

17.   "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

18.   "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against any or all Defendants based on substantially the same facts as described in one or both of the Complaints.

19.    "Service Provider" is synonymous in meaning and equal in scope to the definition of the term, as of the Effective Date, in section 1002(26) of the CFPA, 12 U.S.C. § 5481(26).

20.    "Subject Loans" means consumer loans where the APR (Annual Percentage Rate) exceeds 36%, but does not include (a) loans extended solely to finance the purchase of a vehicle or other consumer good in which the good secures the loan; (b) home mortgages and other loans secured by real property or a dwelling if recorded or perfected; (c) credit cards; (d) student loans; (e) non-recourse pawn loans; and (f) overdraft services and lines of credit.

21.    "T3" means D and D Marketing, Inc. d/b/a T3Leads and its successors and assigns.

## ORDER

### Conduct Relief

### I.

**Permanent Ban on Lead Generation, Lead Aggregation, or Data Brokering**

**IT IS ORDERED that:**

22.    Each Defendant, whether acting directly or indirectly such as through any agent, servant, or employee, or through any entity in which a financial interest is held or obtained, including joint ventures, may not, as of the Effective Date:

a.    act as a Lead Generator, Lead Aggregator, or Data Broker in

connection with the offering or provision of Subject Loans;

b.     act as a Service Provider, employee, or independent contractor to a Lead Generator, Lead Aggregator, Data Broker, or other Person in connection with the offering or provision of Subject Loans;

c.     engage in the offering or provision of Subject Loans; or

d.     receive any remuneration or other consideration from, hold any ownership interest in, provide services to, or work in any capacity for any Person engaged in or assisting the offering or provision of Subject Loans.

## II.

## Customer Information

**IT IS FURTHER ORDERED that:**

23.     Defendants, and their officers, agents, servants, employees, attorneys, or any other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained

before the Effective Date in connection with T3's receipt of Leads or T3's conveyance of those Leads to lenders and other Lead recipients. This paragraph does not prohibit disclosure of customer information if requested by a government agency or required by law, regulation, or court order.

## Monetary Provisions

## III.

## Order to Pay Monetary Damages

**IT IS FURTHER ORDERED that:**

24. Under §1055(a)(2) of the CFPA, 12 U.S.C. § 5565(a)(2), by reason of the violations of law alleged in the Complaints, judgment for damages in the amount of US$1,000,000 is entered against the Defendants, jointly and severally. The Defendants must pay this amount within 30 days of the Effective Date and by wire transfer to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions.

25. Any funds received by the Bureau as damages under this Order will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers and for any attendant expenses for the administration of any such redress.

26.     If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds paid under this Order as damages remain after redress is completed, the Bureau will treat such funds as disgorgement and deposit them into the U.S. Treasury. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section III.

27.     Payment of redress to any injured consumer under this Order may not be conditioned on that consumer's waiving any right.

## IV.

## Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED that:**

28.     Under §1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint in Case No. 2:15-cv-9692-PSG(Ex), and taking into account the factors in 12 U.S.C. § 5565(c)(3), T3 must pay a civil money penalty of US$3,000,000 to the Bureau. The Bureau may exercise immediately any post-judgment remedies available to it to collect this civil money penalty from T3.

29.     Under §1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint in Case No. 2:15-cv-9692-PSG(Ex), and taking into account the factors in 12 U.S.C. § 5565(c)(3), Marina Demirchyan and

8

Grigor Demirchyan must each pay a civil money penalty of US$1 to the Bureau. These nominal civil money penalties are based on Marina Demirchyan's and Grigor Demirchyan's limited ability to pay as attested to in financial statements and supporting documents Marina Demirchyan and Grigor Demirchyan submitted to the Bureau on February 18, 2019 and March 11, 2019.

30.     Any civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by §1017(d) of the CFPA, 12 U.S.C. § 5497(d).

31.     Each Defendant must treat any civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, no Defendant may:

    a.     claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b.     seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

32.     Each Individual Defendant agrees that the civil penalty imposed against such Individual Defendant by the Order represents a civil penalty owed to

the United States Government, is not compensation for actual pecuniary loss, and, thus, as to such Individual Defendant, it is not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

## V.

### Additional Monetary Provisions

**IT IS FURTHER ORDERED that:**

33.     In the event of any default on any Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment and will immediately become due and payable.

34.     Each Defendant relinquishes all dominion, control, and title to funds paid under this Order to the fullest extent permitted by law, and no part of the funds may be returned to any Defendant.

35.     The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau in a proceeding to enforce its rights to any payment or monetary judgment under this Order, such as a nondischargeability complaint in any bankruptcy case.

36.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Bureau under Section 523(a)(2)(A) of the Bankruptcy

Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against each Defendant, even in any Defendant's capacity as debtor-in-possession.

37.     Under 31 U.S.C. § 7701, each Defendant, unless it already has done so, must furnish to the Bureau such Defendant's taxpayer identifying number, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

38.     Under Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 168l b(a)(1), any consumer reporting agency may furnish a consumer report concerning any Defendant to the Bureau, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

39.     Within 30 days of the entry of a final judgment, Order, or settlement in a Related Consumer Action, each Defendant in the Related Consumer Action must notify the Enforcement Director of the final judgment, Order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, no Defendant may argue that Defendant is entitled to, nor may Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related

Consumer Action because of the civil money penalty paid in this action. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against a Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, that Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

40.     T3 may liquidate its non-cash assets in a manner reasonably designed to maximize recovery to creditors, and all proceeds of such liquidation shall be distributed according to applicable federal and state laws.

## Compliance Provisions

## VI.

## Reporting Requirements

**IT IS FURTHER ORDERED that:**

41.     Within 7 days of the Effective Date, the Individual Defendants shall (i) conduct a diligent search and identify and provide to T3 complete contact information for all recipients of T3's Leads in calendar years 2017 and 2018; and

(ii) certify to the Bureau under oath that the Individual Defendants have complied with subpart (i) of this paragraph.

42. T3 shall exercise its contractual and other rights to demand from recipients of its Leads in calendar years 2017 and 2018, using the best information reasonably available to it to identify such Lead recipients, the following information in CSV spreadsheet format: (a) identification of each consumer who received a loan derived from a T3-generated Lead when loan documentation showed that the consumer resided in Alabama, Arizona, Arkansas, Colorado, Connecticut, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, or South Dakota, with such identification to include the consumer's name; residential information as of the consumer's receipt of the loan proceeds; last known address, telephone numbers, and email addresses; and all unique consumer-identification numbers used by the lender, including social security numbers; (b) for each loan identified in response to part (a) of this paragraph, the original lender, current owner of the loan, and all loan-servicing Persons; (c) for each consumer and loan identified in response to part (a) of this paragraph, the principal amount of the loan, the amount received by the consumer as a loan, and any fees, including origination fees, charged to each consumer, listed separately and categorized by the type of fee; and (d) all consumer-payment information for each loan including the amount

and date of each payment and how such payment was accounted for and applied by the lender. T3 shall make its demands within 21 days of the Effective Date, shall demand immediate production to T3, and shall provide responsive information to the Bureau in electronic form within 10 days of T3's receipt of such information.

43. Each Defendant must notify the Bureau of any development that may affect such Defendant's compliance with obligations arising under this Order, including such Defendant's operation of, ownership of, direct or indirect control of, or employment with an entity that offers or is a Service Provider to an entity that offers any Consumer Financial Product or Service; the filing of any bankruptcy or insolvency proceeding by or against such Defendant; or a change in such Defendant's name or address. Each Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

44. Within 7 days of the Effective Date, each Defendant must:

    a.    designate and provide to the Bureau at least one telephone number and an email, physical, and postal address as points of contact that the Bureau may use to communicate with such Defendant;

    b.    identify in writing to the Bureau by name, telephone number, and physical, postal, email, and Internet addresses, all

businesses of which such Defendant is the majority owner or that such Defendant engages in or directly or indirectly controls that engage in activities relating to Subject Loans; and

c. describe in writing to the Bureau the activities of each business identified in response to paragraph 44.b, including the products and services offered and the means of advertising, marketing, and selling.

45. Within 7 days of the Effective Date, each Individual Defendant must:

a. identify its telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

b. describe in detail that Individual Defendant's involvement in every business for which it performs services in any capacity or that it wholly or partially owns, including its title, role, responsibilities, participation, authority, control, and ownership.

46. Should any Defendant seek to transfer or assign all or part of its ownership of any business of which it is the majority owner or that it directly or indirectly controls that engages in or has ever engaged in activities relating to Subject Loans, such Defendant must, as a condition of transfer or assignment, obtain the written agreement of the transferee or assignee to comply with all

applicable provisions of this Order, including but not limited to paragraphs 22 and 23 and the Compliance Provisions beginning at paragraph 41.

47. Within 90 days of the Effective Date, and again one year after the Effective Date, each Defendant must submit to the Enforcement Director an accurate written compliance progress report sworn to under penalty of perjury (Compliance Report), which, at a minimum:

    a. Lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which such Defendant has complied with each such paragraph and subparagraph this Order; and

    b. Attaches a copy of each Order Acknowledgment obtained under Section VII, unless previously submitted to the Bureau.

**VII.**

**Order Distribution and Acknowledgement**

**IT IS FURTHER ORDERED that:**

48. Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

49. Within 30 days of the Effective Date, each Defendant, for any business of which it is the majority owner or that it directly or indirectly controls

that engages in activities relating to any Consumer Financial Product or Service must deliver a copy of this Order to any Persons with responsibilities related to the injunctive relief described in this Order.

50.    For 5 years from the Effective Date, each Defendant, for any business of which it is the majority owner or that it directly or indirectly controls that engages in in activities relating to any Consumer Financial Product or Service, must deliver a copy of this Order to any business entity resulting from any change in business-entity structure, any future board members and executive officers, as well as to any Persons who will have responsibilities related to the injunctive relief described in this Order before they assume their responsibilities.

51.    Each Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery of the Order, from all Persons receiving a copy of this Order from such Defendant.

## VIII.

## Recordkeeping

**IT IS FURTHER ORDERED that:**

52.    Each Defendant must create, for at least 10 years from the Effective Date, for any business of which it is the majority owner or that it directly or

indirectly controls that engages in activities relating to any Consumer Financial Product or Service, all documents, records, and data necessary to demonstrate full compliance with each provision of this Order.

53.    Each Defendant must retain these documents for at least 10 years after creation and make them available to the Bureau upon the Bureau's request.

## IX.

## Notices

**IT IS FURTHER ORDERED that:**

54.    Unless otherwise directed in writing by the Bureau, each Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "Consumer Financial Protection Bureau v. D and D Marketing, Inc., et al., File No. 2013-0574-02" and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement, Assistant Director for Enforcement
1700 G Street, N.W.
Washington, DC 20552.

# X.

## Compliance Monitoring

**IT IS FURTHER ORDERED that:**

55.     For purposes of monitoring each Defendant's compliance with this Order, within 14 days of receipt of a written request from the Bureau, each Defendant must submit additional compliance reports or other requested non-privileged information, which must be sworn under penalty of perjury; provide sworn testimony related to the requirements of this Order; or produce documents related to the requirements of this Order and Defendant's compliance with those requirements.

56.     The Bureau may communicate directly with each Defendant, unless such Defendant retains counsel related to those communications.

57.     T3 must permit Bureau representatives to interview any employee or other Person affiliated with T3 who has agreed to such an interview. The Person interviewed may have counsel present.

58.     Nothing in this Order limits the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XI.

## Release

**IT IS FURTHER ORDERED that:**

59.     The Bureau releases and discharges each Defendant from all potential liability for law violations alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices alleged in the Complaint in future enforcement actions against any Defendant or other Person, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order, or to seek penalties for any violations of the Order

## XII.

## Retention of Jurisdiction

**IT IS FURTHER ORDERED that:**

60.     The Court will retain jurisdiction of this matter for purposes of

construction, modification, and enforcement of this Order.

**It is SO ORDERED.**

DATED this ____28th____ day of __March_____, 2019.

_____
United States District Judge